BOYDEN AND HERRICK

v.

VILLAGE OF BRATTLEBORO.

WINDHAM COUNTY, 1893.

Before: Ross, Ch. J., Taft, Munson and Start, JJ.

*Village sewers. Assessment upon land owners. What questions may be raised in county court upon appeal.*

1.   Upon an appeal to the county court from an assessment by the bailiffs of the village of Brattleboro for contribution towards the expense of constructing sewers, the land owner may raise the question of the right of the bailiffs to make any assessment at all.

2.   Under a provision of the charter that "Every person whose particular drain shall enter into any such common sewer, or main drain, or who, in the opinion of said bailiffs, shall receive benefit thereby for draining his premises, shall be assessed therefor his just share towards the expense of laying and constructing such sewer or drain," a land owner cannot be assessed towards the expense of making changes. in a sewer already laid which are rendered necessary solely by the fact that a new sewer is to be connected with it.

Appeal to the county court from a sewer assessment by the bailiffs of the village of Brattleboro.   Heard at the September term, 1891, ROWELL, J., presiding, upon the report of commissioners.   Judgment for the petitioners.   The petitionee excepts.

In the spring of 1881, several persons, of whom William H. Esterbrooks was one, constructed a sewer along Elliot street, in the village of Brattleboro, for the purpose of affording drainage to the lands upon that street, into the Connecticut river.   Originally this sewer was entered only by those persons who had borne the expense of its construction,. but subsequently other land owners were permitted to enter it upon the payment of a portion of the expense of its construction, and articles of association were framed defining the rights of the several proprietors in this sewer, from which the same came to be called the "association" sewer.

October 7, 1881, the proprietors of the "association" sewer, being desirous of relieving themselves from the future expense of maintaining the same, conveyed the sewer to the village of Brattleboro without compensation, and the village accepted the sewer and agreed to maintain it in the future.

In 1886, the bailiffs of the village of Brattleboro constructed a sewer known as "Elliott, Frost and Flat street sewer," which drained a considerable territory in the village and which connected with and was discharged into the river through the "association" sewer.   In constructing the

"Elliott, Frost and Flat street sewer" and connecting it with the "association" sewer it became necessary to lower a portion of the latter.   The bailiffs of the village claimed that by connecting the "Elliott, Frost and Flat street" sewer with the "association" sewer the two became a part of one system, and that the land owners along the "association" sewer might be assessed towards the expense of lowering that sewer, as aforesaid, and also for the expense of constructing the "Elliott, Frost and Flat street sewer" over and above the amounts derived from assessments.

The petitioners own certain property upon Elliott street, through which the "association" sewer had been originally constructed, and derived their title to the same from the aforesaid William H. Esterbrooks, one of the original proprietors of that sewer.   At the time when the original sewer was constructed there was standing upon this land a building which continued to stand there down to the time of the controversy.   After the petitioners acquired their title to the land and before the laying of this assessment, they constructed upon the land a brick building and from this laid a sewer to and connected with the sewer which had always run from the wood building into the "association" sewer. It was for the benefit derived by the petitioners from the drainage afforded this new brick building that the bailiffs attempted to lay the assessment.

*Waterman, Martin & Hitt* for the petitionee.

*Haskins & Stoddard* for the petitioners.

When an assessment is once levied and paid for the making of a local improvement, no further assessment can be made for its repair.   Dillon Mun. Cor., 596.

The opinion of the court was delivered by

ROSS, Ch. J.   The bailiffs of the defendant assessed the

petitioners for the construction of sewers in the village of Brattleboro. The petitioners were dissatisfied with that assessment and brought their petition to the county court to have that assessment corrected, under section 17, of the charter of the village, which reads: "When any person shall be dissatisfied with the decision of the bailiffs in the award of damages for land taken for a sewer or drain, or in any assessment for contribution for the same, such person may petition the Windham county court for a reassessment of such damages or contribution." This petition is for a reassessment for contribution. The defendant contends that the county court on such petition cannot inquire into the right of the bailiffs to assess for contribution, but that its inquiry is confined to determining the amount of the contribution; that if the bailiffs had no right or jurisdiction to assess for contribution in the given case, the petitioners must set up that defence when sued for the enforcement of the assessment. It is doubtless true that they could set up such defence when sued for the enforcement of the assessment. But we think, by the petition, the county court has given to it the same jurisdiction which the bailiffs had. They must, of necessity, first inquire whether, under the existing facts of the case, they have any right or power to assess the petitioners. A judicial tribunal always must primarily inquire whether it has jurisdiction of the case presented. The petition to the county court is in the nature of an appeal. The county court took the jurisdiction of the bailiffs. The scope of its jurisdiction and inquiry was as broad as that conferred upon the bailiffs. If the bailiffs obtained no right to assess the petitioners the county court took none. The charter gives the right to petition the county court because the petitioners were dissatisfied with the assessment of them for contribution, "inasmuch as they claimed that under the existing facts the bailiffs had no right or power to assess them." This inquiry was open to the petitioners in the

county court.   This contention of the defendant is not sustained.

II.   Had the bailiffs the right to assess the petitioners on the facts found by the commissioners?   By section 13 of the charter, whenever the public health or convenience requires the construction of a common sewer or main drain in the village of Brattleboro, the bailiffs, on proper application, are authorized and empowered to lay, make and maintain such common sewer or main drain, and to repair the same from time to time when necessary.   Then section 15 of the charter provides: "Every person whose particular drain shall enter into any such common sewer or main drain, or who, in the opinion of said bailiffs, shall receive benefit thereby for draining his premises, shall be assessed therefor his just share toward the expense of the laying and constructing of such sewer or drain, and shall be assessed therefor by said bailiffs such share."

This is the only provision in the charter empowering the bailiffs to make assessments for laying and constructing a main sewer or drain.   It is observable that no power is given to assess for maintaining and keeping such sewer or drain in repair.   An assessment can only be made for laying and constructing such sewer or drain.   The laying includes its location, grade, etc., and the easement taken for its construction.   The expense attending its laying and construction is to be assessed upon the persons whose premises are drained by it, either by direct or indirect connection therewith.   No power is given to assess such expense upon the property owners of the village generally.   Whether assessment for the entire expense must be made immediately upon its construction, or whether a portion of it may be carried over and assessed upon the owners of new premises which subsequently become connected, directly or indirectly, therewith, need not be considered; nor need it be considered whether the petitioners were duly notified of the assessment

made by the bailiffs. Upon the facts found, the sewer or main drain which drains the premises of the petitioners was laid and constructed by the sewer association. The bailiffs only accepted it as laid and constructed by the association. The petitioners' grantor paid, as a member of that association, his proportionate share of the expense of laying and constructing this sewer. When, in laying and constructing the Elliot, Frost and Flat street sewer, and connecting it with the association sewer, the bailiffs found it necessary to lower and build over one hundred feet of the association sewer, that necessity arose from the connection of the first named sewer with it, and not because the association sewer was, as originally laid, insufficient to do the work for which it was designed. The association sewer was ample to accommodate all the premises, including those now owned by the petitioners, for whose benefit it was laid and constructed. The expense of lowering and relaying this one hundred feet of the original association sewer, and the $300 which the Elliott, Frost and Flat street sewer cost more than was collected by way of assessment, could be lawfully assessed by the bailiffs, if at all, only upon the owners of premises which, directly or indirectly, connected with the Elliott, Frost and Flat street sewer, even though that sewer should be treated as a subsequent extension of the association sewer. The petitioners were in no way benefitted by such extension. Rather the persons connecting with the Elliott, Frost and Flat street extension were benefitted by the sewer already laid and constructed by the sewer association. Without considering any of the other questions argued, on these views

*The judgment of the county court is affirmed.*