TOWN OF SHREWSBURY *v.* JOHN E. DAVIS ET AL.

May Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed May 9, 1928.

*Charles L. Howe* and *Fenton, Wing & Morse* for the petitioner.

*Lawrence, Stafford & Bloomer* for the petitionees.

STATEMENT BY CHIEF JUSTICE WATSON: This is a petition by the town of Shrewsbury for a writ of prohibition, praying that the writ may issue prohibiting John E. Davis, Edward J. Smith, and Wilson H. Tarble as county road commissioners from further proceeding in the matters pertaining to the town of Shrewsbury's repairing a certain public highway therein, described as follows: "It being a public highway running easterly from the main road south through Clarendon into Cuttingsville, said road beginning a short distance south of the first Rutland Railroad grade crossing near the Clarendon and Shrewsbury Town Line, and running thence easterly about one and one-half miles to the A. (Anthony) Adams Farm in School District No. 11, and thence on to the road intersection." Further praying that the county road commissioners be prohibited from appointing any agent to expend any money on said highway, and from filing any certificate in the office of the county clerk, or otherwise procuring or attempting to procure any judgment to be entered thereon or any execution to issue out of said court in respect thereto; further praying that all proceedings under the report, decision, and order of said road commissioners be stayed until the final hearing of this petition or until further order of the court in the premises; also praying that the petitionees Clarence F. Parker, C. T. Page and Frederick Gienger may by the order of this court be prohibited from instituting or causing to be instituted any further proceedings respecting said highway and the matters involved and included in the petition (referred to below) now pending before the Rutland county court, until final determination of the matters involved in such last named petition or appeal.

The instant petition to this Court was dated July 27, 1927, the order based thereon to show cause why, etc., was issued July 28. All of which with proper summons were served on each of the defendants within the two days following. Answer was filed August 13.

This petition alleges, among other things, in effect that on September 22, 1926, the selectmen of the town of Shrewsbury, having previously given due notice that they would meet at the town clerk's office in said town on the 14th day of September, 1926, at ten o'clock in the forenoon, for the purpose of examining the premises and hearing all persons interested in the matter of the discontinuance of the highway above described, and having, according to said notice, attended at the place and hour set, and the said petitionees, Parker, Page, and Gienger, and J. A. Lapan, J. Heath, and H. Jakeway, all of Shrewsbury, except Parker who resides in Clarendon, having appeared by themselves and by counsel and objected to the discontinuance of said highway, and the said selectmen having heard all parties interested, examined the premises, and duly considered the matters, did thereupon file in the town clerk's office in said Shrewsbury, their decision and order discontinuing said highway ''from the farm buildings on the Anthony Adams farm, so-called, owned by Frederick Gienger, southerly and westerly to the highway leading from East Clarendon, so-called, in the town of Clarendon, to Cuttingsville, so-called, in said Shrewsbury,'' copies of which said notice and order, marked, respectively, Exhibit A and Exhibit B, are attached to the instant petition.

Further alleging that thereafter, on the same 22d day of September, the said petitionees Parker, Page, Gienger, Lapan, Heath, and Jakeway duly appealed by way of petition to the county court from said ''decision and order'' of the selectmen, which said appeal was duly filed and entered in said court, and is still pending therein. Copy of said petition and citation attached thereto are annexed to the instant petition and marked Exhibit C. Further alleging that upon the motion of the said appellants, commissioners were appointed by said court to hear, determine and report respecting the matters involved in such appeal. Further alleging that on the 11th day of October, 1926, and after the taking of such appeal the said appellants gave written notice to Barney A. Smith one of the selectmen aforesaid, the body of which notice was as follows:

"In accordance with the statute in such case made and provided, we, the undersigned, being taxpayers of the Town of Shrewsbury, and citizens of said Shrewsbury, except Clarence F. Parker who resides in Clarendon, . . . . . notify you that the road or public highway running easterly from the main road south through Clarendon into Cuttingsville, said road beginning a short distance south of the first Rutland Railroad grade crossing near the Clarendon and Shrewsbury town line and running thence easterly about one and one-half miles to the old A. Adams farm in School District No. 11 and thence on (to) the road intersection is unsafe for travel and out of repair in that said road is badly washed out so that teams and vehicles cannot pass without danger to life and limb.

"The undersigned are users of said highway and the surface of the road should be filled · in and graded with proper sluices and water bars.

"We trust that you as one of the selectmen of the town will see to it that work is commenced on said highway within the thirty-six (36) hours . which the statute set forth."

The record further shows that said town having neglected to commence work on said highway within the time thus limited, the county road commissioners, on complaint being filed with them by three of said appellants that said highway was out of repair and insufficient for public travel for at least fifty rods from the point of beginning, notified said selectmen that said commissioners would be at the town clerk's office in said town on July 5, at noon, for a hearing in respect to said road; that at said time and place, said selectmen by themselves and by counsel appeared before said commissioners and protested against the proceedings then being attempted by the latter, upon the ground that they had no jurisdiction in the premises, as the questions whether said highway should ever be rebuilt or repaired were then pending before the county court in that county, and a commission had been appointed by said court to hear and report on the matter; that on the day last named. in disregard of such protest, the county road commissioners proceeded to hold said hearing and to take jurisdiction of the subpect matter of the complaint filed with them, and on the 11th

day of July, they made a report of their findings, concluding with an order requiring the town to make and complete the repairs specified therein on or before the 10th day of August, 1927, and said commissioners forthwith filed their said report in the office of the clerk of Rutland County, and delivered a copy thereof to the selectmen of the town of Shrewsbury. Thus the matters and proceedings before the county road commissioners stood at the time the petition for writ of prohibition was presented and the order issued to show cause, etc., and staying all proceedings of said commissioners, respecting the matters referred to in said petition, until final hearing and determination thereof.

The petition avers in short that in July, 1926, there was a heavy rainfall by reason of which the highway in question was badly washed out in many places throughout its entire length, that to make it passable for teams and vehicles would entail expense to the amount of $3,500; that petitionee Gienger has ample means of egress from an ingress to his premises over another highway; that in the town of Shrewsbury there are no dwelling houses or habitations whatever on said highway, the dwelling house on Gienger's farm being partially torn down and dismantled; that each and all of the persons owning land abutting upon said highway have ample means of egress from and ingress to the same without said highway being kept and maintained as an open road.

Petitionees in their answer admit that in said month of July there was a heavy rainfall by reason of which said roadway was washed away in many places, but they deny that Gienger has ample means of access to his premises over another highway, and aver that in order to reach his said premises from where he resides is at least twice as far by highway as it would be if the highway in question were in a proper state of repair. They further deny that each and all of the persons owning lands abutting on said highway have ample means of egress from or ingress to the same without said highway being kept and maintained as an open road, and allege that Parker whose land abuts on said highway is completely landlocked and has been unable to get to his land by teams and vehicles for at least two years; that Parker's land is meadow land for the most part, and by reason of the failure to have proper and ample means of reach-

ing it, he has wholly lost the use of and income from the same for, to wit, two seasons.

WATSON, C. J.    By G. L. 4479, "The selectmen may discontinue a highway laid out by the selectmen or under the authority of the original proprietors; but the selectmen before discontinuing a highway shall appoint a time for examining the premises and hearing parties interested, and shall give notice thereof by posting notice in two or more public places in the town of the time and place of such hearing; and a county court may, by commissioners, discontinue a highway wholly in the county, except one laid out by order of the supreme court; and the supreme court may discontinue a highway laid out under the order of such court or which extends into or through two or more counties; and such roads may be discontinued whether they have been made or not * * * A decree or order made under the provisions of this section may be reviewed by the county or or supreme court under the same conditions and the same proceedings shall be had thereon as are provided for the laying out of highways."

There is nothing connected with the record before us indicating that the provisions of G. L. 4481, authorizing selectmen, in certain conditions, to discontinue portions of "old county highways," or of G. L. 4482, authorizing them to discontinue a highway laid out by a committee appointed by the general assembly, have any application to the matters in hand, and so the highways to which those sections refer are outside our present considerations.

Under the provisions of section 4479, the selectmen of a town constitute an inferior tribunal having certain *quasi* judicial powers, with special and limited jurisdiction as to the matter of discontinuing certain highways. Their powers in such respect are confined to the classes there specified, *viz.*, those laid out by the selectmen or under the authority of the original proprietors. *State* v. *Shrewsbury,* 8 Vt. 223. The origin of a public highway, being by statute a jurisdictional fact in such proceedings, the important question may often arise as to when and how in the proceedings such material and traversable jurisdictional fact, necessary to be proved, should be made to appear. See *Holden* v. *Scanlin,* 30 Vt. 177. Reference is made to this same subject-matter in a later paragraph.

By G. L. 4387 highways shall be laid out, made, and repaired by the town in which they are situated. By G. L. 4388 the selectmen of a town shall, "as the convenience of the inhabitants and the public good require," lay out, alter, and discontinue highways.

The "convenience of the inhabitants and the public good," as specified in the above section of the statute, may in a given instance be properly applied to a road more particularly used to accommodate the land of different persons, even though the residences of such persons be located elsewhere. In *Paine* v. *Leicester*, 22 Vt. 44, this Court, speaking through Judge Isaac F. Redfield, said: "A highway may be as important to accommodate farms, unoccupied as dwelling places, as if they were so occupied. The owners must in some fair way have access to them for themselves and their cattle, summer and winter. And the reason no dwelling houses are built, or occupied, on many lands, is the want of highways. It surely requires no labored argument, to expose the absurdity of requiring a man to cross a mountain with his produce, or bargain with a crusty neighbor, as he best can, or commit a trespass, every time he enters upon his own land, by crossing that of others,—which it seems to me must be the result, if one man may not ask a highway, merely to accommodate *his land*. How can he build a house, if he should choose to, unless he have some convenient road to his land? * * * * * If the present owner do not desire to build a house upon his land accommodated by the road, he may wish to sell to one who will, or he may change his mind."

In *Gilman* v. *Westfield*, 47 Vt. 20, Judge Barrett, speaking for the Court, in discussing the phrase in the statute, "the convenience of the inhabitants and the public good," said: "Now it is to be noticed that the statute does not designate where persons shall be located, in order to enable them to help constitute the *public* whose *good* may constitute cause and occasion for laying out a proposed highway. Nor does it define any required location of *individuals* whose *necessity* or convenience shall require the road to be laid out." While in each of these two cases the question was as to laying out, instead of discontinuing, a highway, the phrase "as the convenience of the inhabitants and the public good require" is the ground on which the selectmen are to act in a given case whether it be of either

class, and that to which we have called attention in those cases may be applied with equal force to either.

By G. L. 4396 three or more freeholders in a town, desiring to have a highway discontinued, may apply by petition in writing to the selectmen for that purpose. But selectmen may act in discontinuing a highway of a class within their jurisdiction without a petition (G. L. 4479; *Brock* v. *Barnet,* 57 Vt. 172; *LaFarrier* v. *Hardy,* 66 Vt. 200, 28 Atl. 1030), previously appointing a time for examining the premises and hearing parties interested, and giving "notice thereof by posting notice in two or more public places in the town of the time and place of such hearing." This was the course pursued by the selectmen relative to discontinuing the highway now in question. But the notice so given by them and on which they acted, did not show on its face any jurisdictional fact, bringing said highway within the scope of their powers for such purpose.

Although the question whether the notice was fatally defective in not showing such jurisdictional fact, would be of primary importance if the decision thereof were essential to the determination of the case at bar,—for the scope of the appellate jurisdiction of the county court is no broader than that of the selectmen (*French* v. *Holt,* 53 Vt. 364; *Gilley* v. *City of Barre,* 37 Atl. 1111; *Boyden* v. *Brattleboro,* 65 Vt. 504, 27 Atl. 164),— yet it not being essential to such determination, we leave the consideration thereof until such time as it shall be more fully presented in the briefs of counsel.

The petitioner contends that the county road commissioners (hereafter generally called county commissioners) are without power to order said highway repaired in compliance with the subsequent complaint to them for that purpose, for three reasons: (1) The appeal from the discontinuance by the selectmen is pending in county court; (2) the county commissioners cannot split the entire road into sections each of which can be repaired within the limits of their statutory powers, and thereby acquire jurisdiction; and (3) the sum of money ($500) to which they are limited by statute (G. L. 4606), in fixing the amount required for making the repairs necessary, is inadequate for that purpose.

In connection with the questions thus raised it may be well to notice some of the different statutory provisions, showing the

powers, duties and methods of procedure of the county commissioners when called upon to act.

G. L. 4604 provides that if a highway or bridge is out of repair and unsafe for travel, any three citizens or taxpayers in the State may give notice of such insufficiency to one of the selectmen of the town in which it is situated, by a writing duly signed, setting forth in general terms the location of such highway or bridge and the nature of the insufficiency; and, if such town neglects for thirty-six hours thereafter to commence work upon such highway or bridge, etc., said citizens or taxpayers may file with one of the road commissioners for the county, a written complaint signed and sworn to, setting forth in general terms the location of such highway or bridge and the nature of the insufficiency complained of, and stating that they have personally examined the same. G. L. 4605 requires said commissioners forthwith to notify one of the selectmen, and one or more of the persons filing such complaint, of the time and place when and where the commissioners will meet for the examination of such highway or bridge and for hearing upon the complaint; and in pursuance of such notice, said commissioners or a majority of them, ''shall examine such highway or bridge, and hear all parties interested as to its condition and the repairs ncessary to make the same safe and convenient for public travel, and the amount required for such repairs.'' Then follows G. L. 4606 which reads: ''If, after such examination and hearing, said commissioners are of opinion that the highway or bridge is out of repair or unsafe for travel, they shall determine what work or repairs are necessary and fix the amount required therefor, not exceeding five hundred dollars; and they shall make a written report of their findings, containing a full description of the repairs or work determined upon, and a statement of the amount required therefor, and shall conclude with an order requiring such town to make such repairs or perform such work within such time as they judge reasonable, not exceeding thirty days, unless, in the opinion of said commissioners, it is impracticable to complete the work in that time.'' By G. L. 4607, ''Said commissioners shall forthwith file their report in the office of the clerk of the county in which the highway or bridge is situated, and deliver a copy of such report to one of the selectmen. Such report shall be final and conclusive as to the necessary repairs and the amount required therefor.''

The statute further provides (G. L. 4608) that at the expiration of the time limited for such repairs, said commissioners without further complaint, and upon such notice to the town as they deem reasonable, shall ascertain if their order has been complied with by the town; and, if they find the town has failed to do the work ordered by them, they shall forthwith appoint an agent to expend upon such highway the amount fixed in their report, etc., anl shall file in the office of the county clerk a certificate, stating that their order has not been complied with, and that judgment should be entered against the town for the amount named in their report, and giving the name of the person appointed to expend such amount. G. L. 4609 provides that the county clerk shall thereupon enter judgment in favor of the commissioners against the town for the amount named in the report, with costs, and shall issue execution, etc., in the execution directing the officer collecting the same to pay the amount of such judgment to the agent appointed by said commissioners, etc. G. L. 4610 requires the agent immediately to repair such highway or bridge as directed in said report, etc.

Annexed to the petition for writ of prohibition is Exhibit D, which is a copy of the complaint to the county road commissioners, in which the highway and its insufficiency are described as follows: ''It being a public highway running easterly from the main road south through Clarendon into Cuttingsville, said road beginning a short distance south of the first Rutland Railroad grade crossing near the Clarendon and Shrewsbury town line, and running thence easterly about one and one-half miles to the A. Adams farm in School District No. 11 and thence on to the road intersection. The said highway is now out of repair and insufficient for public travel for at least fifty rods from the point of beginning as above described in the following respects: * * * * * * * * * * *''

The petitioner's contention (1) that the county commissioners had not power to order repairs made upon said road because the aforementioned appeal was pending in the county court, is unsound. The only question heard and determined by the selectmen pursuant to the notice posted by them, was as to the discontinuance of the highway described therein, resulting in its discontinuance. The petition to the county court in the nature of an appeal from such discontinuance, was and is in law confined to the same question; and upon this appeal, as

will presently be seen, the court's range of action is limited accordingly.

It is said in petitioner's brief that petitionees Parker, Page, and Geinger, by setting forth in their petition that the highway in question "should be kept open and in good state of repair and not discontinued," submitted to the county court the very questions attempted to be litigated before the county road commissioners. While it is true that the petition here mentioned, effecting an appeal from the discontinuance of the highway by the selectmen, says that the undersigned freeholders, etc., "respectfully show that the public good requires that," said highway "be kept open and in good state of repair and not discontinued," the fair meaning of this is hardly what is claimed for it by petitioner. It purports to be and is but a statement of what the public good requires. It submits nothing to the county court beyond the legal operation of an appeal of that nature. Its operation is well stated in *French* v. *Holt*, 53 Vt. 364, 367, as follows: "The appeal is brought to the county court by petition, rather than by having it allowed and certified by the selectmen, but the jurisdiction of the county court is confined to the identical matter which the selectmen of the town have acted upon. The proceedings in the county court, as the appellate tribunal established by statute for revision of the action of the selectmen, are but a continuation of the proceedings commenced before the selectmen under" the statute. And in *Gilley* v. *City of Barre*, 37 Atl. 1111, this language is used: "The county court, in legal effect, is a court of appeal, in regard to the identical matter presented to the trustees for action." Indeed, the statute itself (G. L. 4479) under which the selectmen acted in discontinuing the highway in question, by providing that " a decree or order" made under that section, "may be reviewed by the county or supreme court," makes it plain that the appellate jurisdiction of the county court is confined to the decree or order made by the selectmen, from which the appeal was taken.

The question of repairing the road was entirely outside the scope of those proceedings. The subsequent complaint filed with the county commissioners and upon which they acted had no connection with the discontinuance of the highway. Its scope and purpose were limited to the question of repairing a certain described portion of the road, so as to make it safe and

convenient for the public travel reasonably to be expected thereon. The discontinuance by the selectmen (if it had any force) was, in effect vacated by the appeal, and the highway reinstated to its former existence. *Taft* v. *Pittsford*, 28 Vt. 286.

The principle of law which the town seeks to invoke in (2) is most effective where applicable, to prevent the splitting of· an entire indivisible claim so to give a judicial tribunal jurisdiction which it would not otherwise have. *Bullard* v. *Thorpe*, 66 Vt. 599, 30 Atl. 36, 25 L. R. A. 605, 44 A. S. R. 867. But whether it is applicable in the instant case is an open question. It is relied upon by the town as a means of preventing further action by the county commissioners in compliance with the complaint filed with them under the statute, because the selectmen neglected to act in the premises, after notice to them in writing from the requisite number of citizens or taxpayers in the State, that the road in question was out of repair and unsafe for travel, etc. The statute prescribes when and in what circumstances resort may be had to such commissioners, the method of procedure by them when acting, and the limitations upon their authority. That tribunal is *quasi* judicial in character, and, within the scope of its powers, it is superior to the selectmen of a town. In the instance now under consideration, it had proceeded in the matter set forth in the complaint filed with it, up to and including the making and filing of its report. In such circumstances, the right of the town to prevent it from further proceeding under the statute, by invoking such principle of law, may be somewhat doubtful. However, we base our decision in this respect upon the more substantive ground following:

Thus, for the purpose of identifying the particular highway in the town as the one out of repair, a general description of its entire length is given, but the location of the part "out of repair and insufficient for public travel," is specifically set forth as "for at least fifty rods from the point of beginning as above described."

At the hearing before the county commissioners, all persons interested, including the town of Shrewsbury, having been duly notified, and the parties to the instant case being represented by counsel, the commissioners examined said fifty rods of said highway, and heard all parties interested as to the condition

thereof and the repairs necessary to make it safe and convenient for public travel, and the amount required for such repairs.

The chairman of the county commissioners, John E. Davis, being duly sworn as a witness (in deposition) in the instant case, testified as to the bad and unsafe condition of said fifty-rod strip of road. He further testified that following this strip was a piece of road seventy-five or a hundred rods in length, guessing at it, which was "pretty fair"—"quite good," and "then there was another strip of badly washed road." The witness said he went over the last named strip and it was a long ways. The testimony of this witness was substantially corroborated by the testimony of the other two commissioners as to the fifty-rod strip being followed by a piece of road in fairly good condition—needing but minor repairs—but one of them did not estimate the length of that piece of road as he did not go the whole length of it, and the other one estimated the length as somewhat shorter than that given by witness Davis.

In view of the piece of "pretty good" or "quite good" strip of road intervening between the locations of the two wash-outs mentioned, we are unable to sustain the contention of the petitioner in the present case that the claim for repairs to be made at those two locations constitute an entire indivisible claim for repairs on that highway. On the other hand, we are of the opinion and hold that the claim for repairs to be made at the location of the fifty-rod strip is, within the true sense of the law, divisible from the claim for repairs at the other washout or washouts on said highway.

The petitioner contends (3) that the order made by the county commissioners for repairing the fifty-rod strip of the road, was beyond their power, for it in fact requires an expenditure of more than five hundred dollars, by reason of which they were wholly without jurisdiction in the premises. But as before seen, by section 4607 of the statute, the report commissioners "shall be final and conclusive as to the necessary repairs and the amount required therefor." Such being the statutory force of their report in the two respects named, the most that can be said against the adequacy of the amount stated in the report as required for the repairs described therein, is that the commissioners committed error in not fixing the amount larger within the legal scope of their powers. But as the commissioners had jurisdiction of the parties and of the subject-matter

to the extent they were called upon to act in response to the complaint filed with them, the writ of prohibition is not available to correct such mere error, if any they made in the respect named. *Wilkins* v. *Stiles,* 75 Vt. 42, 52 Atl. 1048, 98 A. S. R. 804.

*Petition dismissed with costs.*

CHASE, J., concurs in the result.