### In re Ruth Bill

[724 A.2d 444]

No. 97-203

Present: Amestoy, C.J., Morse, Johnson and Skoglund, JJ., and Corsones, D.J., Specially Assigned

Opinion Filed October 30, 1998

*Christopher D. Roy* of *Downs Rachlin & Martin, P.C.*, Burlington, for Intervenor-Appellant.

---

440

*John W. Whitcomb* of *Neuse, Smith & Venman, P.C.*, Middlebury, for Appellee.

**Amestoy, C.J.** This appeal arises from a decision of the Addison Superior Court granting petitioner Ruth Bill's request to declare legally discontinued a segment of old highway within the Town of New Haven, a portion of which runs across her property. Intervenor Thomas Fisher, whose undeveloped parcel of land abuts a segment of the old highway, contends that the court erred in concluding that there was statutory authorization for a 1926 order by the New Haven selectboard purportedly discontinuing the segment at issue. We agree and, thus, reverse.

The disputed highway segment was originally laid out two centuries ago, but with the exception of the trees which line the route and evidence of old bridgework, it is not maintained as a road today. The road segment is located wholly within the Town of New Haven, and runs northerly from the intersection of Route 17 and Field Days Road, along the western edge of Fisher's parcel, then over Bill's, finally intersecting with Maple Street Extension near a point where that road turns into Hallock Road. The parties in this case are neighboring landowners. Fisher argues that when he bought his twenty-eight acre parcel of property in 1979, he was assured that it was accessible by way of the old town road. He contends that the property would be landlocked and undevelopable without the highway. Around the time of his purchase, Fisher asked the New Haven selectboard about the legal status of the highway segment. The board informed Fisher that "highway mapping since 1931 has never acknowledged existence of [the disputed highway segment]" and that Fisher bore the burden to prove that the roadway exists.

In 1995, Fisher sought to convey the parcel to his daughter and son-in-law so they could build a home. The town zoning administrator denied Fisher's application for a building permit based on the administrator's determination that the highway segment had been discontinued, and therefore the parcel lacked the necessary road access. Fisher again approached the selectboard to confirm the status of the highway, and as a result, the historical origins of the road came to light.

The road was devised in 1798 when Vermont's General Assembly adopted "An Act Appointing A Committee to Lay Out, Alter and Straighten the Road from Vergennes Through Castleton to Bennington," pursuant to which a committee of three individuals undertook "to view, survey, lay out, and alter or turn said road from

Vergennes, through Waltham, Weybridge, Cornwall, Whiting, Sudbury, Hubbardton, Castleton, Poultney, Wells, and to Colonel Elisha Averill's in Pawlet." The resulting highway, referred to by the parties as the "Legislative Highway," was laid out by the appointed committee in 1799, and a survey of the highway's course through New Haven was recorded in the town records.

In 1812, the New Haven selectboard laid out the town's portion of a highway leading from Vergennes to Weybridge — the so called "1812 Highway" — which tracked the same course as the Legislative Highway through the town. A survey for the 1812 Highway was recorded in New Haven's town records.

On this evidence, notwithstanding the fact that the road no longer appeared on maps, the New Haven selectboard concluded in November 1995 that the disputed highway segment remained a legal highway and issued Fisher a permit to construct road access to his property along the highway's right-of-way. Upon notice of the permit's issuance, Bill employed a surveyor who discovered in the town land records a 1926 order of the New Haven selectboard purportedly discontinuing the highway segment. The notation read: "Highway Closed. The road leading from J.S. Marshall's to the residence of C.C. Tier was officially closed by the Selectmen W.H. Patterson and George Palmer."[1] The parties agree that the 1926 notation refers to the disputed highway segment. Following discovery of the 1926 order, the selectboard held hearings in late 1995 and early 1996 to address the highway's status. In January of 1996, the board concluded that the disputed segment remains a five rod, class four highway.

Bill petitioned the superior court, pursuant to 19 V.S.A. §§ 701-819, to overturn and vacate the selectboard's 1995 and 1996 orders respecting the disputed segment. In response to Fisher's motion that the petition be considered pursuant to V.R.C.P. 75, the court ruled that it would treat Bill's petition as a declaratory judgment action to determine whether the highway exists, focusing specifically on whether the 1926 action by the New Haven selectboard constituted a valid discontinuance under the General Laws of 1917, the law then applicable. The court concluded that the 1926 board acted within its authority. Fisher appeals.

---

[1] The 1926 order was discovered in the town land records, rather than the town records, which fact is significant for two reasons. The town custom has apparently been to file surveys and notations affecting highways in the town records, not the land records. The misfiling of the highway closure notation accounts for why it went for decades without discovery by successor boards and, perhaps accounts partly for why the 1996 New Haven selectboard concluded that the road had never been properly discontinued.

█    The rule consistently applied in Vermont has been that "[t]he procedure to be followed in laying out or discontinuing a highway is wholly statutory and the method prescribed must be substantially complied with or the proceedings will be void." *In re Mattison*, 120 Vt. 459, 462, 144 A.2d 778, 780 (1958); see also *Town of Barton v. Town of Sutton*, 93 Vt. 102, 103, 106 A. 583, 584 (1919). We presume that action taken by a selectboard in the scope of its official duties is in accordance with statutory requirements. See *Traders, Inc. v. Bartholomew*, 142 Vt. 486, 489, 459 A.2d 974, 977 (1983). Nonetheless, because the selectboard of a town constitutes an inferior tribunal with certain quasi-judicial powers, see *Town of Shrewsbury v. Davis*, 101 Vt. 181, 187, 142 A. 91, 93 (1928), when a selectboard acts outside its statutory authority with respect to a discontinuance, the defect is akin to a lack of jurisdiction over the subject matter. See *Mattison*, 120 Vt. at 463, 144 A.2d at 780. The proceedings and order would be void and may be impeached in any way and at any time. See *id.*

The parties agree that the present-day legal status of the disputed highway segment turns on the validity and legal effect of the 1926 selectboard's purported discontinuation of the highway: if the board substantially complied with the then-existing statutory scheme for highway discontinuances, the highway is discontinued and no longer exists; if not, the highway still exists.[2] We pause to note matters over which there is no dispute. The parties agree that the disputed segment constitutes a portion of both the 1798 Legislative Highway and the 1812 Highway. Further, the parties agree that the disputed segment which was purportedly closed lies wholly within New Haven.

In relevant sections, the 1917 General Laws of Vermont provided as follows:

§ 4452. When towns in different counties; proceedings. An application to lay out, alter or discontinue a highway extending into or through two or more towns . . . where such towns lie in different counties, shall be made to the supreme court, which shall have the same power, and shall proceed in the same manner as the county court, when the towns lie in the same county.

§ 4453. . . . When the public good requires a highway to be laid out, altered or discontinued, extending into or

---

[2]This is so because, if the 1926 action was a valid discontinuance, subsequent selectboard orders declaring the highway as legally existing would be void for failure to follow the proper statutory procedures for laying out a highway.

through two or more towns in the same county, seven or more freeholders of such towns, or the vicinity, may apply to the county court; and such court . . . may . . . render judgment, as when the highway is located in only one town . . . .

§ 4482. . . . Selectmen may alter or discontinue a highway laid out by a committee appointed by the general assembly; but if the highway is laid through two or more towns, the same proceedings shall be had as in laying, altering or discontinuing highways through two or more towns.

Bill argues that the 1926 selectboard derived its authority from the first clause of § 4482 because the highway had been laid out by a committee appointed by the General Assembly and the highway being discontinued lay wholly within one town. Because the highway being discontinued was not "laid through two or more towns," *id.*, she contends that § 4453's requirement that the county court rule on such discontinuances was not triggered. The trial court adopted this reasoning and, accordingly, ruled that the selectboard had jurisdiction to order the discontinuance.

Fisher counters that the Legislative Highway *as a whole* must be considered to determine which body had jurisdiction to discontinue the disputed segment. Under Fisher's construction, where the entire highway extends through two or more towns, discontinuance of a segment located wholly within a single town nonetheless implicates the second clause of § 4482, and thus discontinuance is only valid when done by means of "the same proceedings . . . as in laying, altering or discontinuing highways through two or more towns." *Id.* We are persuaded that Fisher's is the correct construction of the statute.

This Court has, on many occasions, addressed the jurisdictional issues raised in connection with highways extending into two or more towns. In *Mattison* we considered a challenge to the Town of Manchester selectboard's alteration and reclassification of a highway segment within the town. At about the same time as Manchester's action, the selectboard of the Town of Sandgate similarly altered and reclassified a section of the same highway within that town. Like the statute in this case, the applicable statute in *Mattison*, 47 V.S. § 5076, provided that when a highway extending into or through two or more towns in the same county was to be laid out, altered, or discontinued,

application was to be made to the county court. The Court held that the Manchester selectboard was without jurisdiction to make the alteration to the highway segment within the town, stating:

[T]he highway in question commences in the town of Sunderland, crosses through a portion of the town of Manchester and runs into the town of Sandgate. The county court under §5076 and not the selectmen had jurisdiction.

*Mattison*, 120 Vt. at 462, 144 A.2d at 780. The Court's reference to the three towns through which the highway traversed indicates its consideration of the highway as a whole rather than the segment to be closed, and undercuts Bill's contention that only the segment to be discontinued should control.

We applied similar reasoning in *Traders, Inc. v. Bartholomew, supra.* There, an owner of a landlocked parcel sought a declaratory judgment to determine whether the town's 1908 discontinuance of a highway segment running over his land had been in conformance with applicable statutory law. The landowner claimed that the road itself had continued into the next town and, therefore, the county court, and not the selectboard, had jurisdiction over the discontinuance. The trial court found that the highway had not extended into the next town. We concluded that the court's finding was not clearly erroneous, and thus affirmed the court's ruling that the highway had been properly discontinued by the selectboard. See *Traders*, 142 Vt. at 489, 459 A.2d at 977; see also *Kelley v. Town of Danby*, 46 Vt. 504, 511 (1874) (where highway connecting multiple towns has been laid over older highway originally laid out solely within single town, though town board would have jurisdiction to discontinue its old town road, it would be powerless to discontinue the highway because it extended "'into or through two or more towns.'" (quoting 24 G.S. § 52)).

Bill asserts that Fisher's construction of the statute would render the first clause of § 4482 superfluous. She contends that all highways laid out by act of the general assembly are laid through two or more towns, and, therefore, basing jurisdiction on the highway *as a whole*, rather than the segment to be discontinued, would always trigger the second clause of § 4482, thus rendering the first clause superfluous. We are unpersuaded for the simple reason that we find in the session laws numerous highways commissioned by the general assembly which were confined to a single town. See, e.g., "An act appointing a committee to lay out and examine the roads in Woodbury, and for other purposes therein mentioned." Session Laws: 1813, Ch. XLIV. Our construction of § 4482 gives effect to all parts of the statute.

We are mindful that strict adherence to statutory rules with respect to highway discontinuances could, theoretically, produce the absurd result of bringing back highways long since gone. See *Ferguson v. Town of Sheffield*, 52 Vt. 77, 83 (1879) (Court would not apply strict common law rules of res judicata to highway proceedings where result would have absurd result of perpetuating unnecessary highway and would involve idea of permanency in our highways not heretofore entertained). Here, however, our decision does not lead to an absurd result, but rather allows for the use of a road that clearly has some continuing utility to a landowner whose land would otherwise be undevelopable and landlocked. The result, moreover, is consistent with the most recent determination of the New Haven selectboard that the highway still exists.

■ We therefore hold that because the highway was laid through two or more towns, the 1926 New Haven selectboard lacked jurisdiction to discontinue the town's portion of the highway. The selectboard's failure to comply with the then-existing statutory scheme voids its proceedings and order purporting to discontinue the highway segment, and, therefore, the highway still legally exists.

*Reversed.*