**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|   |   |   |
|---|---|---|
| | } | |
| **Appeal of Tepper, et al.** | } | **Docket No. 225-12-04 Vtec** |
| | } | |
| | } | |

## Decision and Order

Appellant-Applicants Don and Marcia Tepper, Rosalind Tepper, Dennis Waskiewicz, James and Alice Tepper, and Peter and Katherine Nowlan appeal from the decision of the Town of Ludlow (Town) Development Review Board (DRB) denying their application for a five-lot major subdivision with access from Tepper Drive, in the Lakes and Residential 40,000 zoning districts. Appellant-Applicants are represented by Thomas A. Zonay, Esq.; the Town, as Appellee, is represented by J. Christopher Callahan, Esq. Fourteen Interested Persons appeared and are represented by Matthew T. Birmingham, Esq.

This appeal is on-the-record, since the Town has adopted and implemented the procedures necessary for such appeals, pursuant to 24 V.S.A. §§ 4471 and 4472. All parties have filed briefs on the merits of this appeal for the Court's consideration. Of the issues presented in Appellant-Applicants' Statement of Questions, the parties have narrowed the contested issues to the following:

(a) Did the DRB comply with the Vermont Municipal Administrative Procedures Act (the MAPA), specifically 24 V.S.A. § 1206, with respect to the taking of evidence?

(b) Did the Town comply with the MAPA's requirements regarding ex parte communications, contained in 24 V.S.A. § 1207?

1

(c) Were the DRB members properly qualified to render a decision on Appellants' subdivision application, pursuant to 24 V.S.A. § 1208?

(d) Did the DRB comply with 24 V.S.A. § 1208 in rendering its decision?

(e) Does Appellants' subdivision application comply with § 6.2.6 of the Town's Subdivision Regulations (Regulations), requiring a fifty-foot-wide right-of-way to access two or more subdivided lots that do not have frontage on a public highway?[1]

### Factual Background

In an on-the-record appeal, the factual findings of the administrative body are given great weight, although they are not conclusive. This Court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred. See In re Town of Sherburne, 154 Vt. 596, 604-05 (1990); Appeal of Lussier and Noe, Docket No. 116-5-02 Vtec (Vt. Envtl. Ct., Sept. 16, 2002). If there was conflicting evidence, the DRB is the body charged with weighing this evidence. Appeal of Doyle, Docket No. 100-5-02 Vtec (Vt. Envtl. Ct., Jan. 21, 2003). This Court will not disturb factual findings rendered by an appropriate municipal panel if supported by substantial evidence in the record as a whole. Id.

Upon consideration of the record and the parties' memoranda, the Court determines that the following facts, found by the DRB, are supported by substantial evidence in the record.[2]

---

[1] Appellee-Applicants posed a sixth question in their Statement of Questions and Brief challenging the DRB's compliance with "due process," which was assumed to be a general reference to the MAPA procedural requirements. We have not listed this issue separately, since it was not separately briefed and because we have addressed all of Appellant-Applicants' specific procedural challenges in the text of this Decision.

[2] Since this appeal is on-the-record, we do not render our own Findings of Fact, independent of those determined by the DRB.

1.	Appellant-Applicants own an approximately sixty-nine-acre parcel of land in both the Town of Ludlow and the Town of Plymouth. Appellant-Applicants and members of their family have owned this parcel since 1847.

2.	In Ludlow, Appellant-Applicants filed an application on March 15, 2004, to subdivide their 31.85-acre parcel off Tepper Drive and northeasterly of Lake Rescue (the Lake), also known as Round Pond, into five lots. The five lots, numbered Lot 1 through Lot 5, range in size from 5.78 to 6.84 acres. Lots 1, 2, and part of Lot 3, are in the Town's Lakes District, while Lots 4, 5, and the remainder of Lot 3, are in the Residential 40,000 zoning district. It is undisputed that the proposed lots meet the zoning districts' dimensional standards.

3.	According to the subdivision preliminary plats, the southwesterly corners of Lots 1 and 2 have frontage on Lake Rescue, while Lots 3, 4, and 5, are to be served by a fifty-foot right-of-way extending from the existing Tepper Drive through Lots 1 and 2, and along the northerly border of Lot 3. A "hammerhead" turnaround is planned on Lot 4, and a thirty-foot right-of-way extends easterly from the turnaround to serve Lot 5. The northerly borders of Lots 2 through 5 run along a portion of the border between the Towns of Plymouth and Ludlow.

4.	Access to the five-lot subdivision will be from Tepper Drive, a private road, approximately three-tenths of a mile long, first built in 1905. Tepper Drive extends northerly from Ellison Lake Road, roughly along the Lake's eastern shore. Land between the Lake and Tepper Drive is occupied by five camp structures, owned by unrelated owners, including some of the Interested Persons. The septic fields serving those camp houses are located on both the easterly and westerly sides of Tepper Drive. Tepper Drive also serves five other homes, including one dwelling situated to the west of the proposed subdivision.

5.     According to a September 26, 1984 deed from Macib to Tepper, recorded on June 24, 1986, at Book 100, Page 46, Tepper Drive is a lawful right-of-way "for vehicular and pedestrian traffic only, over an existing road bed to land and premises of Grantee," as depicted on a Southern Vermont Surveys Map, dated July 14, 1976, and numbered Drawing No. 816-76.

6.     The Southern Vermont Surveys Map found in the Town's land records is noted as Drawing No. 916-76, dated July 14, 1976, and revised May 9, 1977. It depicts a twenty-foot-wide right-of-way from Town Highway No. 5, Ellison Lake Road, to the southerly boundary of the Teppers' 31.85-acre Ludlow property.

7.     A second survey by Nowlan Engineering, JOB 87-834, dated October 7, 1987, recorded on March 7, 1989, was also found in the land records, depicting Tepper Drive as a fifty-foot-wide right-of-way. The Nowlan Engineering survey is certified as "based upon research of the Ludlow Land Records and surveys of record. Method of survey was by total station, error closure = 1:304,000." There was no evidence provided to the DRB of any deed reference that was relied upon to establish that the right-of-way referenced in the 1984 survey drawing had been expanded from twenty feet to fifty feet.

8.     Testimony at the hearing established that the existing road bed of Tepper Drive is in fact between ten to twelve feet wide, and that if Tepper Drive were fifty feet wide, it would pass through four of the five camps on the westerly side of the road and over four septic fields and two septic tanks.

9.     In addition to their Ludlow subdivision, Appellant-Applicants also proposed subdividing their remaining land, which sits southerly of Kingdom Road in the Town of Plymouth. That subdivision is not the subject of this application, and Appellant-Applicants do not propose an access drive to link the subdivision in Plymouth with the subdivision at issue here in Ludlow.

4

10. The Ludlow subdivision application was reviewed as a major subdivision under Subdivision Regulations § 3.3.1. No party challenges the DRB's notice of public hearings on Appellants' application.

11. The DRB held hearings on Appellant-Applicants' proposed subdivision on May 17, July 13, August 9, and September 14, 2004. DRB Chairman Phil Carter and members Julie Nicoll, Bret Harlow, Linda Petty, and Richard Harrison, were present for all the hearings, except for Bret Harlow, who was absent for the hearing on August 9th.

12. A site visit was held on July 13, 2004, prior to the DRB hearing on that same date. The site visit's occurrence was noted in the record, but the site visit itself was not recorded and no minutes were taken.

13. Prior to the DRB's first May 17, 2004 hearing, letters were submitted to the DRB by some of the proposed subdivision's abutters, including some of the Interested Persons. These letters became part of the DRB's record.[3]

14. Appellant-Applicants and the Town submitted additional evidence at the July 13th and August 9th hearings. During the July 13th hearing, the DRB requested that all parties submit any additional evidence "as soon as possible." The DRB then reconvened the hearing on August 9th and completed the taking of new evidence. The Town asserts that the DRB then reconvened the hearing on September 14, 2004 "so that the Board could verify the findings depicted on various surveys and maps." Appellant-Applicants do not contest this summary of the process the DRB followed. After the

---

[3] By Affidavit dated February 3, 2006, and filed with the Court on February 7, 2006, the Town Zoning Administrator asserted that these letters were submitted with the record. We could not locate these letters in the record and therefore requested by Entry Order dated January 25, 2006, that the Town see to their filing. The Zoning Administrator's cover letter of January 24, 2005, transmitting the record does not reference these letters. The letters are now part of the official record on file with this Court. We regard their prior omission from the record as an inadvertent act, rectified prior to this Decision. Appellant-Applicants request that the Court impose a sanction upon the Town, amounting to approval of their appeal. We decline to do so.

close of the September 14, 2004 final hearing, Appellant-Applicants attempted to submit a Memorandum proposing Findings of Fact and issues to be decided by the DRB. The DRB refused to accept this document. Appellant-Applicants thereafter timely appealed the DRB Decision to this Court.

15.     The DRB issued its Decision denying Appellant-Applicants' subdivision proposal on October 22, 2004, because the subdivided parcels, which lack frontage on a public highway, would not be served by a fifty-foot-wide right-of-way in accordance with Regulations § 6.2.6.

## Discussion

Appellant-Applicants allege that the DRB violated a number of the procedural requirements of the MAPA, 24 V.S.A. §§ 1201–10 (2005). When interpreting the MAPA, as with any statute, this Court's task is to effectuate the express intent of the Legislature as evidenced by the "plain, ordinary meaning of the language" used. Barnet Hydro Co. v. Pub. Serv. Bd., 174 Vt. 464, 466 (2002) (mem.) (quotations omitted). We will not look beyond the plain meaning of the statutory language when that language is clear and unambiguous. Town of Bridgewater v. Dep't of Taxes, 173 Vt. 509, 510 (2001) (mem.).

Appellant-Applicants first argue that the Town's DRB did not comply with the requirements of 24 V.S.A. § 1206, regarding the taking of evidence, because the Town accepted letters from ten abutters, which were not received in connection with direct testimony. We must first remember that in an on–the-record appeal, the decision of an appropriate municipal panel is entitled to some deference. In re: Appeal of Vermont Egg Farms, Inc., Docket No. 155-8-98 Vtec, slip op. at 4 (Vt. Envtl. Ct., Dec. 28, 1999). In that light, we find for the following reasons that the DRB did not err in accepting the letters. The statements in the letters were not required to be made under oath because the letters were not testimony within the meaning of 24 V.S.A. § 1206(a). Testimony is

6

defined as "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition." Black's Law Dictionary 1485 (7th ed. 1999). The definition of "testimony" in the context of § 1206 indicates that evidence constitutes testimony if it is presented through an affidavit or deposition or orally at the hearing. There is no suggestion that the letters were affidavits or depositions and therefore cannot act as testimony, and were not accepted as testimony by the DRB.

Section 1206(c) allows for the submission of written evidence to expedite the direct testimony of a witness, "provided the witness is available for direct testimony and cross-examination at the hearing on this evidence." 24 V.S.A. § 1206(c). At no time during the DRB's proceedings did Appellant-Applicants object to the submission of these letters, nor did they request or require any of the letter writers to testify. If the abutters had been called to testify, then the provisions of 24 V.S.A. § 1206(a) would require the abutters to testify under oath or affirmation. As noted above, that provision is not applicable here because the letters submitted to the DRB are not testimony and may properly be classified as pre-hearing filings submitted pursuant to 24 V.S.A. § 1206(c).

Moreover, of those ten abutters all but one, Ronald Ferguson, attended at least one of the DRB's hearings on the proposed subdivision and were available to testify.[4] Thus, the DRB did not commit reversible error in accepting the letters in lieu of the abutters' testimony because the letters' writers need only be "available for direct testimony and cross-examination at the hearing," 24 V.S.A. § 1206(c).

---

[4] The record and Decision do not evidence that the DRB relied in any way on Ronald Ferguson's letter in making its decision. Thus, Appellant-Applicants were not prejudiced by its inclusion in the record. Therefore, we will not invalidate the DRB's decision on this basis.

Appellant-Applicants also contend that these letters constitute ex parte communications, requiring compliance with 24 V.S.A. § 1207(c). Appellant-Applicants ignore the plain language of §§ 1207(a) and 1207(b), which state that ex parte communications are those that are received "while the proceeding is pending," 24 V.S.A. § 1207(a), (b). In this instance, the letters were submitted to the DRB before the start of the hearings on the proposed subdivision. In any event, these letters were disclosed to Appellant-Applicants, who had an opportunity to subpoena and cross examine the letter writers. Therefore, the letters do not constitute ex parte communications.

Appellant-Applicants also argue that in refusing to accept their memorandum containing proposed findings of fact submitted after the close of the hearing, the DRB violated § 1204(b) of the MAPA, requiring that "at any hearing . . . opportunity shall be given to all parties to respond and present evidence and argument on all issues involved." 24 V.S.A. § 1204(b). We see no need to reach the question of whether Appellant-Applicants' memorandum qualifies as either evidence or argument under this section of the MAPA because Appellant-Applicants' argument misconstrues the statute's plain language. If Appellant-Applicants had submitted their memorandum before the close of the hearing, the DRB must accept that document under § 1204(b). But the statute's language dictates that argument and evidence shall be presented "at any hearing." In this instance, the record is clear that the DRB provided multiple opportunities at the various hearings for all parties to submit evidence and legal arguments. The DRB announced at the second hearing on July 13th that further evidence and arguments should be submitted "as soon as possible." Appellant-Applicants submitted the memorandum after the time the DRB had provided for the submission of evidence and written arguments. Therefore, it was within the discretion of the DRB to exclude this memorandum. The DRB's refusal to accept the

memorandum offered after the close of the evidence is not sufficient grounds to overturn the DRB Decision.

Appellant-Applicants also allege that the DRB's July 13, 2004 site visit was a hearing and that evidence from the site visit should have been taken under oath and recorded. Moreover, they contend that statements made at the site visit constituted impermissible ex parte communications, requiring the DRB to follow the disclosure requirements contained in 24 V.S.A. § 1207(c).

Appellant-Applicants' contention that the site visit was a hearing is unavailing. Under our procedural rules, specifically V.R.E.C.P. 2(e)(2),[5] site visits have been recognized as serving an important function in rendering a zoning or subdivision decision. However, during site visits, no party is placed under oath and no record is maintained. Thus, in order for this Court to rely upon comments or observations made during the site visit, those comments and observations must be repeated and referenced during the hearing. See In re Quechee Lakes Corp., 154 Vt. 543, 552 (1990). The witness is then testifying under oath and available for cross-examination.

The record reveals that the DRB followed a similar process here concerning their site visit. At the subsequent hearings on July 13, August 9, and September 14, 2004, all parties, including Appellant-Applicants, had the opportunity to reference the observations and comments made during the site visit. We have found no case law to support the argument that site visits must be regarded as official hearings, where a record must be maintained and individuals attending must be placed under oath. The most valuable component of a site visit is the observations that put into context the evidence presented and arguments made at the hearings. Site visits are a necessary tool

---

[5] We recognize that the proceedings before the DRB were not governed by our Rules, but rather make this reference to emphasize the general importance of site visits when rendering decisions in zoning or subdivision proceedings.

for any entity charged with reviewing zoning or subdivision applications. To deny the DRB the use of this necessary tool, unless a cumbersome procedure is followed of placing attendees under oath and making a record,[6] ignores the fact that the evidence itself is derived from the physical environment and not from statements made by parties in attendance.

Unless the DRB relies on observations from the site visit and those observations are testified to at the hearing, evidence of the site visit need not be included in the record. Quechee Lakes, 154 Vt. at 552. Thus, the DRB could not have violated the MAPA's requirements that hearings be recorded, 24 V.S.A. § 1205(c), or that testimony be made under oath, 24 V.S.A. § 1206(a), by the manner in which it conducted its site visit because the site visit was not a hearing. Moreover, it does not appear that the DRB relied on any comments exclusively made at the site visit, as no evidence in the record refers to such comments. If the DRB did rely on the site visit in making its findings of fact, evidence of the site visit must be included in the record. 24 V.S.A. § 1209(b); Quechee Lakes, 154 Vt. at 552. Without reference to the site visit, we find support for the DRB's findings of fact from the substantial testimony and other evidence admitted at the four hearings.

Appellant-Applicants also allege that impermissible ex parte communications occurred at the site visit that require written disclosure under 24 V.S.A. § 1207(c). However, Appellant-Applicants fail to provide any evidence that any substantive statements were made by the DRB or the parties at the site visit. As stated earlier, in an on-the-record appeal, actions of an appropriate municipal panel are entitled to

---

[6] Because of the important role site visits serve of putting an applicant's plans into context, it appears that if we adopted Appellant-Applicants' argument, recording the site visit would have to include both audio and video capabilities. Imposing such an administrative burden upon DRBs that conduct on-the-record proceedings is not warranted, particularly in the absence of a specific mandate from our Legislature or Supreme Court.

deference, <u>Vermont Egg Farms</u>, Docket No. 155-8-98 Vtec, slip op. at 4, and in the absence of evidence to the contrary, we will uphold the DRB action. Because Appellant-Applicants failed to present any evidence of statements made at the site visit, nor any evidence of reliance upon these alleged (but unreferenced) statements, the DRB's actions at the site visit were not improper. The manner in which the DRB conducted its site visit cannot be a basis for overturning the DRB Decision in this appeal.

Appellant-Applicants also argue that the DRB's vote was defective because one member of the DRB, Bret Harlow, was absent from the August 9, 2004, hearing but participated in the DRB's decision on the proposed subdivision application. Appellant-Applicants argue that the provisions of 24 V.S.A. § 1208 were violated by Mr. Harlow's conduct and that this violation provides an independent ground for overturning the DRB Decision. We disagree, as we find no evidence in the record to support Appellant-Applicants' allegation that Mr. Harlow failed to honor the directives of § 1208.

Section 1208 requires DRB members to attend all hearings on an application as a prerequisite to participating in the decision. If a member was absent from a hearing but still wishes to participate in the decision, then § 1208(b) requires the member to listen to the recording or read the transcripts of any testimony they missed and to review all evidence submitted prior to participating in the DRB's deliberations. 24 V.S.A. § 1208(b). There is no evidence in the record that any party objected to Mr. Harlow's continued participation in the DRB proceedings after his absence on August 9th. Further, neither party submitted any evidence to refute a finding that Mr. Harlow complied with 24 V.S.A. § 1208(b). Therefore, we must presume that an action taken by a municipal board like the DRB "in the scope of its official duties is in accordance with statutory requirements," absent specific evidence to the contrary. <u>In re Bill</u>, 168 Vt. 439, 442 (1998). On this issue we find no evidentiary support for Appellant-Applicants' assertion that Mr. Harlow failed to comply with the mandates of § 1208(b).

Lastly, we must determine whether the DRB's Findings of Fact and Decision denying the proposed five-lot subdivision for failure to comply with Subdivision Regulations § 6.2.6 was supported by substantial evidence. In re Town of Sherburne, 154 Vt. at 604-05. Section 6.2.6 requires that any subdivided lots without frontage on a public highway have a right-of-way for access of no less than fifty feet in width. None of the five lots proposed to be created by this subdivision have frontage on a public highway.

Based on the deeds submitted, the DRB found that Appellant-Applicants failed to meet their threshold burden of showing that they had a right-of-way for access of no less than fifty feet in width to their parcel. Testimony at the hearing demonstrated that the existing road bed referenced in the original deed for their right-of-way was in fact between ten and twelve feet wide. Evidence was also presented showing that if Tepper Drive, the proposed subdivision's access right-of-way, was in fact fifty feet in width, then four of the five camp structures located on Tepper Drive encroach upon the right-of-way. Moreover, the DRB received no evidence in the form of a deed or other instrument conveying a fifty-foot-wide right-of-way to Appellant-Applicants; rather, the only deed presented as evidence referencing the right-of-way relied on a survey depicting Tepper Drive's right-of-way as being only twenty feet wide. The survey produced for the Nowlans in 1987 depicted a fifty-foot right-of-way, but provides no foundation as to why the surveyor concluded that the right-of-way width had been lawfully increased.

If there is conflicting evidence, the DRB is the body charged with weighing this evidence. Appeal of Doyle, Docket No. 100-5-02 Vtec (Vt. Envtl. Ct., Jan. 21, 2003). The Court will not disturb its factual findings if supported by substantial evidence in the record as a whole. Appeal of Doyle, Docket No. 100-5-02 Vtec. The DRB made adequate findings from substantial evidence in the record that a fifty-foot-wide right of

way does not exist to serve the proposed subdivision. Therefore, Appellant-Applicants' proposed subdivision fails to satisfy Subdivision Regulations § 6.2.6. Since Appellant-Applicants have received no variance from Regulations § 6.2.6, and have not otherwise established, through a "quiet title" action in Superior Court, that their right-of-way is, in fact, at least fifty feet wide, the record here provides sufficient support for the DRB's denial of their application.

Accordingly, based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that the decision of the Town of Ludlow Development Review Board denying Appellant-Applicants' proposal for a five-lot subdivision off Tepper Drive is **AFFIRMED**, as it is supported by substantial evidence in the record as a whole and there is insufficient evidence to support Appellant-Applicants' claim in this on-the-record appeal that the DRB violated the cited provisions of the Vermont Municipal Administrative Procedures Act in particular or Appellee-Applicants' due process rights in general.

Done at Berlin, Vermont, this 8th day of February, 2006.

_____

Thomas S. Durkin, Environmental Judge