**Ronald BENSON, Betty Benson, Barry Benson, Edith Benson and the Town of Royalton v. Perry HODGDON, Carol Hodgdon, John Michael Taylor, Danielle Taylor, Ellen L. Frost, Jeffrey S. Slack, Monica Clark, Rodney Clark, and Warren E. Preston**

[992 A.2d 1053]

No. 09-076

¶ 1. February 24, 2010. This ancient roads case stems from a declaratory judgment by the Windsor Superior Court in favor of the Town of Royalton and plaintiffs Ronald Benson, Betty Benson, Barry Benson and Edith Benson, affirming the existence of an old town highway across defendants' and plaintiffs' land. Defend-

ants Perry Hodgdon and Carol Hodgdon[1] appeal this finding on the grounds that (1) the plaintiffs failed to meet their burden of proof as to the existence and location of the road; (2) the Town had abandoned the road through disuse and defendants now hold title through adverse possession; and (3) the trial court's declaratory judgment did not sufficiently clarify the rights of the parties because it did not require a new survey of the road, laying out its metes and bounds. We affirm.

¶ 2. While the record in this case is rife with ancient and modern surveyors' terminology, the facts on appeal are relatively straightforward. Plaintiffs own an unimproved tract of land in the Town of Royalton. It is bounded to the north by defendants' land and to the south by an abutting landowner. Though plaintiffs have some access to the tract from the west via an overgrown and potentially impassable skid road leading to Vermont Route 14, they had previously used an old field road across defendants' land to enter their property. At some point, defendants refused to permit plaintiffs to use this field road and plaintiffs sought a declaratory judgment that they had a prescriptive easement along the field road across defendants' land. Alternatively, including the Town as a defendant, plaintiffs claimed that the road at issue in this appeal, an existing lane to the west of the field road but still on defendants' property (the Lane), was in fact an unmaintained Class 4 public highway properly surveyed and laid out by the Town over 200 years ago (the Road). A

jury returned a defendants' verdict on the prescriptive easement claim, and this case followed by means of an amended complaint. The Town did not participate in the initial phase of this action, and the trial court entered a default judgment against it. The court later granted the Town's motion to set aside the default judgment, and the Town joined plaintiffs in claiming that a public highway exists across defendants' land. As part of their prayer for declaratory relief, plaintiffs requested a declaration of the course of the highway and an order requiring defendants "to remove the pond and barn and restore the town highway to its original condition."

¶ 3. A formal survey of the Road was recorded in 1804 in the Royalton town land records.[2] This survey describes two sections of the Road, one trending south from a point just to the north of Post Farm Road and terminating "westerly of Wm Bowles now dwelling house about 46 rods," and the other running south from there to what is now Slack Hill Road. The starting point of the northern section of the Road is described as "a beach [sic] tree on the west line of Lot No. 13," and it continues south from there across Post Farm Road until it ends near the former Bowles homestead. The part of the Road at issue is predominantly this northern section — this is the portion of the Road that crosses defendants' land and provides access to plaintiffs' property — and of that, only the portion of the Road running south from Post Farm Road is of import.[3] The survey also includes a short portion of the southern section of the

---

[1] In the original filing, John Taylor, Danielle Taylor, Ellen Frost, Jeffery Slack, Rodney Clark, Monica Clark, Virginia Cleland, and Warren Preston were also named as defendants. Of these defendants, the Taylors and Virginia Cleland had the claims against them dismissed and the other parties failed to participate below.

[2] The trial court found that the Road was properly recorded. Defendants do not directly contest this finding, but appeal the trial court's conclusion as to the Road's location on their property.

[3] The portion of the Road to the north of Post Farm Road and not crossing defendants' property, which is on both sides of Post Farm Road, was formally discontin-

Road, since the point where the two sections described in the 1804 survey meet is on plaintiffs' property.

¶ 4. Plaintiffs contend that the Road as recorded in the survey follows the same physical course as the Lane, which runs generally south from Post Farm Road and eventually arrives at Slack Hill Road after traversing defendants', plaintiffs', and other landowners' property. Specifically, the Lane departs from Post Farm Road and passes through a gate and into defendants' barnyard where it runs under a ramp used to access the upper floor of defendants' barn, built around 1907. Beyond that, the Lane drops steeply and passes around a pond built by defendant Perry Hodgdon's father in 1966 directly in the old path of the Lane. From the pond, it continues through defendants' pasture, running between two rows of old maple trees to a gate separating defendants' property from plaintiffs'. It then continues south across plaintiffs' property and through another gate at the boundary between plaintiffs' land and that of an adjoining landowner to the south.

¶ 5. Until this law suit, the Town's attitude towards the Lane appears to have been indifferent. There is no evidence on the record that the Town objected to the "high drive" ramp passing over the Lane and into the barn, and no evidence that it objected to the erection of the various gates across the Lane. At the time of the pond's construction less than fifty years ago, the Town did not object to its placement directly in the roadway. In the 1970s, plaintiffs demanded that the Town maintain the Lane; the Town took no action.

¶ 6. During the ensuing bench trial, the central conflict between the parties focused on the physical location of the Road on defendants' land. Both parties brought in local surveyors as expert witnesses.

ued by the Town of Royalton on September 10, 2008.

Plaintiffs' expert conducted a site inspection of the property in question. The expert assumed the beech tree which marked the start of the northern section of the Road had disappeared in the intervening 200-plus years, though she recognized that one could discern the tree's location based on other records. Accordingly, she focused her investigation on signs of the Road south of Post Farm Road, on defendants' and plaintiffs' property. She ultimately concluded that the Lane and the Road were one and the same. Central to her opinion was the discovery of the Bowles' cellar hole — located after the conclusion of the jury trial — to the east of plaintiffs' property. The cellar hole represented the dividing point between the northern and southern sections of the Road, and with this point fixed, plaintiffs' surveyor was able to match the physical evidence on the ground to the 1804 survey with minimal deviation. This result, however, required ignoring the first call of the survey, the beech tree, as including that point would have made the rest of the physical evidence of the Road not fit the survey. In contrast, defendants' surveyor opined that the Lane and Road were distinct. His opinion was based on the likely location of the beech tree and other physical evidence tending to show the Lane was for private use and the Road ran a separate albeit parallel course. His conclusions did not take into account the location of the then-newly discovered Bowles' cellar hole.

¶ 7. Ruling in favor of plaintiffs and the Town, the trial court found that the Road established in the 1804 survey

> from the point it leaves Post Farm Road, is one and the same road as the lane . . . going southerly through [defendants'] barnyard, thence southerly to the gate at [plaintiffs'] property line, thence southerly to the gate at

the [adjoining landowners']
property line, thence southerly
connecting to the existing Slack
Hill Road.

In so holding, the trial court relied on various old maps and local property deeds referencing the Road. Most importantly, it accepted the expert testimony of plaintiffs' surveyor and her opinion regarding physical evidence on the ground which linked the surveyed road to the existing lane. By accepting this view, the court also "disregard[ed] the first call in the 1804 survey," the old beech tree, because determining the location of a now 200 year-old tree was a surveying challenge and inclusion of that point alone would have pivoted the 1804 survey calls away from the abundant physical evidence of the Road. The court also noted that "[a]lthough there is no visible evidence of a road north of Post Farm Road, there is considerable evidence of one to the south of Post Farm Road."

¶ 8. Having found for the plaintiffs, the court concluded that the Road "follows the existing signs of the roadway and is three rods in width." The court noted that the Road "wanders" from the survey calls as it crosses defendants' and plaintiffs' property, but any deviation "is within the three rod right of way." The only portion where the deviation was greater than three rods was the area south of the Bowles' cellar hole where the physical evidence on the ground "varies from the [survey's] calls by about 150 [feet]." For this section, the court adopted the survey maps admitted into evidence as representative of the Road's official course. In concluding, the court held that the Road "is open to the general use of the public, consistent with the laws of the State of Vermont and the Town of Royalton. Any use of this land inconsistent with the existence of a town highway in this location without the permission of the Town shall be discontinued forthwith."

¶ 9. On appeal, defendants raise three challenges to the trial court's ruling. First, they argue that the plaintiffs did not prove, by a preponderance of the evidence, that a public road existed and was located on their land, and thus the trial court erred in so finding. Second, they claim that the Town had abandoned the Road and defendants gained ownership of it through adverse possession. Finally, they maintain that the court's order failed to meet the requirements of the Declaratory Judgments Act, 12 V.S.A. § 4711 et seq., because it lacked sufficient clarity. We address each contention in turn.

¶ 10. Our review of a trial court's finding of fact is curbed by our deference to that tribunal's unique position to assess witness credibility and the weight of evidence presented; we reverse only for clear error. *Hamilton v. Town of Holland*, 2007 VT 133, ¶ 9, 183 Vt. 247, 950 A.2d 1183. Viewing the record in the light most favorable to the prevailing party and excluding the effect of modifying evidence, we will reverse only if "there is no credible evidence to support the findings." *Id.* (quotation omitted). We review a trial court's conclusions of law de novo. *Id.*

¶ 11. In their first claim of error, defendants have asked us to do little more than reweigh the trial court's findings under a de novo standard and have not effectively challenged the court's legal conclusions. They do not appear to challenge the court's conclusion that the Road was created when it was properly laid out by the Town under the statutory scheme in place at the time.[4] See *Austin v. Town*

---

[4] In their brief, defendants rely on case law requiring that a town's selectboard "substantially comply" with the statutory requirements for laying out a road to support their argument that the trial court's decision lacks evidentiary support. However, the cases cited refer to whether the *selectboard* has met the legal require-

*of Middlesex*, 2009 VT 102, ¶¶ 7-8, 186 Vt. 629, 987 A.2d 307 (mem.). Defendants' central argument is that the trial court's conclusion that the Road is located on their property and follows the same course as the Lane lacks support in evidence. They claim that in discounting the first call in the 1804 survey, basing the course of the Road on the remainder of the survey, and failing to sufficiently reconcile the survey with the physical monumentation on the southern section of the Road, plaintiffs did not meet their burden of proof, and thus the trial court's conclusion is wanting for a sufficient basis.

¶ 12. Determining the weight afforded evidence is properly the role of the trial court. Moreover, under our deferential review, defendants' claim is belied by the trial court's findings in which it expressly stated that "the opinion of [plaintiffs' surveyor] is more credible" than that of defendants' surveyor. See *Okemo Mountain, Inc. v. Lysobey*, 2005 VT 55, ¶ 16, 178 Vt. 608, 883 A.2d 757 (mem.) (explaining this Court will uphold trial court's decision to credit one expert witness's testimony over another's concerning boundary location). The trial court highlighted the differences of opinion between the two experts, but chose to adopt plaintiffs' surveyor's findings because the evidence she "found on the ground . . . fits too closely with the 1804 survey to be coincidence." It also noted that deed references and old maps of the area suggested a town road in the location plaintiffs advocated. In contrast, defendants' expert re-

ments for creating a road; they do not provide a standard for assessing the weight of evidence before a trial court. See, e.g., *In re Bill*, 168 Vt. 439, 442, 724 A.2d 444, 446 (1998) (when laying out or discontinuing highway selectboard must "substantially comply" with statutory procedure "or the proceedings will be void").

lied on a survey that the trial court found to be "of little value in answering the question before this court" and also failed to provide any physical evidence to support his opinion that the survey described a road parallel to the Lane. Thus, the starting point for the Road and its course across the affected lands, as adopted by the trial court, was a matter of evidence and witness credibility, not the application of law to facts. Where, as here, there is credible evidence to support such a finding, we will not disturb it.

¶ 13. Next, defendants suggest they have adversely possessed the Road and request that this Court extend the common law to recognize a nonstatutory form of discontinuing a public highway. Because a nonstatutory method for creating a road exists via dedication and acceptance, defendants argue "a non-statutory method to discontinue a road through abandonment should likewise exist." Based on the prevailing statutes and our precedent, we disagree.

¶ 14. Public lands generally are statutorily exempted from adverse possession, even if such possession is open and notorious. 12 V.S.A. § 462. Moreover, Vermont law makes clear that a legally existing public highway cannot be taken through adverse possession. Section 1102 of Title 19 of the Vermont Statutes, entitled "Acquiring highways by adverse possession," clearly precludes acquiring "[a] right or interest within the limits of a highway . . . by anyone by possession or occupation."[5] See *In re Town Highway No. 20 of Town of Georgia*, 2003 VT 76, ¶ 20, 175 Vt. 626, 834 A.2d 17 (town highway land "exempt from claims of adverse possession"). We have noted that even when a right-of-way has lain dormant and a landowner has built structures upon it, this still does not

[5] The full text of § 1102 reads: "A right or interest within the limits of a highway shall not be acquired by anyone by possession or occupation."

cause title to shift. See *Pidgeon v. Vt. State Transp. Bd.*, 147 Vt. 578, 581, 522 A.2d 244, 246 (1987). For defendants' argument to succeed, therefore, the Town must have either formally discontinued the Road or otherwise relinquished title to it.

¶ 15. The process for "discontinuing a highway is wholly statutory and the method prescribed must be substantially complied with or the proceedings will be void." *In re Bill*, 168 Vt. 439, 442, 724 A.2d 444, 446 (1998) (quotation omitted); see 19 V.S.A. §§ 708-711 (statutory procedure for discontinuation). We have previously noted that discontinuance of a road requires an affirmative act on the part of the town, more than passive abandonment or acquiescence to another use. See *McAdams v. Town of Barnard*, 2007 VT 61, ¶ 12, 182 Vt. 259, 936 A.2d 1310; *Capital Candy Co. v. Savard*, 135 Vt. 14, 16, 369 A.2d 1363, 1365-66 (1976); *In re Mattison* 120 Vt. 459, 462, 144 A.2d 778, 780 (1958). Indeed, this interpretation of the law comports with the above-cited statutes and the understanding that, where public rights-of-way are concerned, the lack of maintenance by the municipality or use by the public is not enough to extinguish public ownership. Even as the law governing discontinuance has become less strict, a municipality must still take some formal step. See 19 V.S.A. § 717(b) (creating presumption of discontinuance if municipality has not kept highway passable for period of "30 or more consecutive years *following a final determination to discontinue the highway*" (emphasis added)).[6]

¶ 16. Defendants contend that public lands can be adversely possessed when their public use has been abandoned by the owning municipality and cite *Jarvis v. Gillespie*, 155 Vt. 633, 587 A.2d 981 (1991), for support of this position. In *Jarvis*, we recognized that, as an exception to 12 V.S.A. § 462, public land could be taken via adverse possession if its public use had been abandoned. *Id.* at 642, 587 A.2d at 987. Defendants' reliance on *Jarvis* is misplaced, however, as the public property in question in *Jarvis* was never put to any public use, let alone as a public right-of-way; the municipality in question acquired the land by contract and did not take it by eminent domain; and the focus of our opinion was solely on the applicability of 12 V.S.A. § 462 and did not address the more specific dictates of 19 V.S.A. § 1102.

¶ 17. To the extent that defendants suggest we extend the common law to recognize abandonment of a municipal right-of-way, we decline the invitation. As explained above, for a municipality to relinquish its claim of title to a legally created highway, it must make some affirmative act to discontinue the road in question. Moreover, though a nonstatutory means exists to create a road — dedication and acceptance — that method still requires the municipality to take some step to bring the road into being, namely acceptance.[7] See, e.g., *Smith v. Town of Derby*, 170 Vt. 553, 554, 742 A.2d 757, 759 (1999) (mem.) ("To make a road a public highway by dedication and acceptance, there must be both a dedication by the private owner and an acceptance of that dedication by the town."). It would be illogical for this Court to hold that a public highway can be extinguished through a municipality's inaction, yet continue to require some form of action to recognize the highway's creation.

---

[6] We recognize that this subsection does not have an impact on the current litigation. See 2005, No. 178 (Adj. Sess.), § 14(b), enacting 19 V.S.A. § 717(b) ("This act shall not affect a suit begun or pending at the time of its passage.").

[7] We note in passing defendants have repeatedly asserted that there has never been a claim the Lane became a public highway through dedication and acceptance.

¶ 18. Defendants' final claim of error is that the trial court's declaration failed to meet the standards of 12 V.S.A. § 4711, the declaratory judgment statute, because it did not "clarify the rights of the parties or terminate the insecurity and uncertainty of the controversy." In seeking relief for this error, defendants ask the Court to remand this action so the trial court can order "the entire road be surveyed and pinned by [plaintiffs]." In support of their position, defendants cite the requirements for laying out a road under Title 19, chapters three and five. Their argument lacks merit.

¶ 19. The purpose of a declaratory judgment is to "declare rights, status and other legal relations," and such declaration "may be either affirmative or negative in form and effect." 12 V.S.A. § 4711. The declaration should "enunciate so far as is requested and appropriate the rights of the parties and nothing more." *Griffith v. Nielsen*, 141 Vt. 423, 427, 449 A.2d 965, 967 (1982). Here, plaintiffs requested a declaration of the course of the Road, an acknowledgement of their rights to use the Road, and an order requiring removal of the pond and barn.[8] In granting relief to plaintiffs, the trial court expressly held that the Road "is open to the general use of the public" and "[a]ny use of this land inconsistent with the existence of a town highway in this location without permission of the Town shall be discontinued forthwith." Moreover, the court concluded that "[t]his town highway follows the existing signs of a roadway and is three rods in width" and "[w]here the road has wandered . . . it follows the 'edge of the wheel track.'" It further relied on two admitted exhibits to augment this description. Defendants' reliance on portions of Title 19

is unavailing as those statutes address the statutory requirements for creating or laying out a road by the selectboard. Here, the trial court has recognized only the existence of a previously laid-out road, noting its course, and has done so with adequate clarity for the parties in interest.[9]

*Affirmed.*

---

[8] The Declaratory Judgments Act permits coupling claims for injunctive relief along with prayers for declaratory judgment. See *Graves v. Town of Waitsfield*, 130 Vt. 292, 295, 292 A.2d 247, 249 (1972).

[9] We choose not to rule on the clarity necessary in describing the "wandering" portion of the Road — that section which deviates more than 150 feet from the survey call — as determining that section was not part of the conflict before the trial court and thus not necessary to "declare rights, status and other legal relations" of any party to the case or this appeal. 12 V.S.A. § 4711.