NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 100

No. 2016-394

| | |
|---|---|
| Hannah P. Sachs | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| Downs Rachlin Martin PLLC and | May Term, 2017 |
| Caryn Waxman, Esq. | |

John P. Wesley, J.

Katherine Burghardt Kramer of Katherine Burghardt Kramer Law Office LLC, Middlebury, and James L. Mulligan of Simpson & Mulligan PLLC, Lebanon, New Hampshire, for Plaintiff-Appellant.

Robert D. Rachlin and Samantha V. Lednicky of Downs Rachlin Martin PLLC, Burlington, for Defendants-Appellees.

PRESENT: Reiber, C.J., Skoglund, Eaton and Carroll, JJ., and Harris, Supr. J., Specially Assigned

¶ 1. **SKOGLUND, J.** After a bench trial, the trial court concluded that defendant-attorney's failure to adequately inform plaintiff Hannah Sachs of the risks of delay in filing a parentage action "negligently fell short of the standard of reasonably competent legal representation." Despite the court's conclusion that defendant breached her professional duty of care, the trial court determined that plaintiff failed to demonstrate direct causation or measurable damages as a result of defendant's negligent advice. On appeal, plaintiff challenges the court's

legal conclusions and contends that the court's factual findings established both causation and damages. We agree, and so reverse.

¶ 2. Defendant's negligent advice occurred when plaintiff consulted her about filing parentage and child support actions in conjunction with plaintiff's pregnancy, which was the result of a brief relationship during the summer of 2010. When plaintiff informed the child's father of the pregnancy, he expressed his wish not to be involved with plaintiff and the child.

¶ 3. Three months before her daughter's birth, plaintiff visited the offices of Downs Rachlin Martin (DRM) and met with defendant. Plaintiff sought information regarding "establishing parentage, considerations of parental rights and responsibilities, and the determination of child support." Defendant advised against filing a paternity action immediately after the child's birth. Instead, she recommended waiting at least a year. According to defendant, delayed filing of a parentage action when the father had had no contact with the child could lessen any risk of the father seeking primary or joint physical and legal responsibility or a substantial amount of parent-child contact. Further, she advised, delay in filing would also limit his ability to use child custody as a negotiation tool to limit child support.

¶ 4. More significant in this case, defendant assured plaintiff that she would receive child support retroactive to the date of her child's birth. The court found defendant "did no specific research to support her opinion as to the retroactivity of child support," instead relying on her experience as a family law attorney. Based on defendant's advice, plaintiff was persuaded to wait a year from child's birth before she filed a legal claim. She also arranged to receive, as a loan, $500 per month from her mother and $500 per month from one of her mother's friends after the child was born, to help her support her daughter. Plaintiff expected to repay the loans from her mother and the friend once the child support obligation was determined.

¶ 5. Plaintiff's daughter was born on July 12, 2011.

2

¶ 6.    In June 2012, following through on defendant's advice to wait one year, plaintiff again contacted defendant to commence parentage and child support proceedings against the father. Four months later, in October 2012, defendant filed a parentage action.

¶ 7.    At a case manager's conference in January 2013, the father stipulated that plaintiff was the sole physical and legal guardian of their daughter. The father agreed to contact his daughter only at plaintiff's discretion. Plaintiff was represented at the case manager's conference by a colleague of defendant, an associate attorney at DRM.

¶ 8.    Either on the same day of the case manager's conference or some date closely following the conference, the associate attorney also discussed child support with plaintiff. During this discussion, the associate informed plaintiff that any child support award would be retroactive to the date the parentage action was filed, not the date of birth. Plaintiff protested that she had received different advice from defendant. The associate later followed up with plaintiff and confirmed that defendant still believed that a child support award would be retroactive to birth. Defendant reiterated this belief in a March 15, 2013 email to plaintiff, where she indicated that she was waiting for the court to approve the parentage and parental rights stipulation and stated that the order should be "finalized before we make any issue of child support."

¶ 9.    Subsequently, several phone conversations took place in March 2013 between plaintiff and the father, and they agreed to meet at a playground in April 2013. During the conversation, Plaintiff said that she needed $2000 per month for childcare, and the father approved of the amount, but there was no discussion of retroactivity to the child's date of birth. Either in this conversation or in a later one, the father explained that if plaintiff maintained an amicable relationship with his family, plaintiff might even receive financial assistance above and beyond the assistance required for child support, but he warned that contentious litigation would turn his mother "into a mad dog."

3

¶ 10.    Negotiations between defendant and the father's attorney revealed that the father would not agree to pay $2000 per month as plaintiff anticipated.  Moreover, even though the parties ultimately agreed on $1875 per month for child support dating from the child support order, the father's attorney disagreed that the father should owe any payment in arrears, either from the date of the parentage action or the child's birth.

¶ 11.    Given the father's attorney's stance, defendant finally researched the law governing child support arrears to confirm her position.[1]  At this point, defendant discovered that she had provided incorrect advice to plaintiff regarding retroactive child support.  Instead, in a letter to plaintiff acknowledging her error, defendant explained that no definitive law authorized arrears back to a child's birth and the date of retroactivity was generally at the trial court's discretion.  In practice, moreover, "courts use the date of filing as opposed to the date of birth."  After receiving this letter, plaintiff told her mother's friend, "This is devastating news . . . .  I can hardly see straight [sic] I'm so angry and upset."

¶ 12.    Subsequently, in a letter to the father's attorney, defendant acknowledged that her research revealed that she had been mistaken about the date of retroactivity.  In the same letter, defendant also wrote: "Without a doubt, had the rules on retroactivity of support been more clear, [plaintiff] would have filed a parentage action as soon as [her daughter] was born."

¶ 13.    After further negotiations, the parties finally reached a stipulated child support agreement, which was approved as a Child Support Order on June 28, 2013.  The agreement required the father to pay $1875 monthly to plaintiff beginning on July 1, 2013 and one lump sum payment for arrears.  The arrears went back only so far as the filing of parentage action—$1625 was for child support, and $250 was for medical care.  The agreement considered the father's gift

---

[1] Defendant originally billed plaintiff for this research; however, in response to complaints from plaintiff's mother's friend—who was funding plaintiff's legal fees along with the monthly $500 loan—defendant removed the fee for research from the bill.

income from family members, although this income was unpredictable and unreliable. Two worksheets computing calculations based on the Vermont Child Support Guidelines were included in the agreement. The first worksheet considered the father's trust income in child support calculation. In that scenario, the guidline child support would be $1060 per month. The second worksheet considered trust income and gift income in its calculation. There, the guidline child support would be $1562 per month.

¶ 14. After using the lump sum of arrears to partially repay the loans made by her mother and her mother's friend, plaintiff still owes $15,000 on the loans they made to support plaintiff and her daughter and to pay plaintiff's legal fees.

¶ 15. Plaintiff filed legal malpractice and breach of contract claims against defendant in the Vermont Superior Court, Windsor Unit, Civil Division. Following a bench trial, the court concluded that "by failing to adequately give Plaintiff an explanation of the risk that, by following [defendant's] recommended strategy of delay, Plaintiff quite conceivably might be unable to establish retroactive child support, [defendant] negligently fell short of the standard of reasonably competent legal representation." However, the court determined that plaintiff failed to prove the negligent representation was a "cause-in-fact" of plaintiff's injury and that the evidence was "equivocal" as to whether plaintiff would have decided to file immediately had she been aware of the risk. It also found insufficient evidence for nonspeculative monetary damages.

¶ 16. On appeal, plaintiff claims that defendant provided negligent advice, that plaintiff relied on it to her detriment, and that she suffered nonspeculative damages. Defendant claims that even if she breached her duty of care, plaintiff has not shown any causal connection between the alleged negligence and her injury.

¶ 17. To establish legal malpractice, a plaintiff must prove that (1) the attorney owed a professional duty of care to the client; (2) the attorney breached the duty; (3) the attorney's act was a proximate cause of the client's injury; (4) and that the client suffered damages as a result of the

5

injury. See Brown v. Kelly, 140 Vt. 336, 338, 437 A.2d 1103, 1104 (1981). There is no challenge to the court's conclusion that defendant breached her duty of care. Therefore, we address only the two remaining elements of proximate cause and damages. We review the court's legal conclusions de novo, and the court's factual findings for clear error. Benson v. Hodgdon, 2010 VT 11, ¶ 10, 187 Vt. 607, 992 A.2d 1053 (2010) (mem.).

## I. Causation

¶ 18. The trial court concluded that plaintiff failed to prove causation because she did not demonstrate that she would have filed immediately if defendant had correctly informed her of the financial risk in delayed filing. We disagree. Based on factual findings made by the trial court, we conclude that plaintiff met her burden to prove that, but for defendant's negligence advice, she would not have delayed filing.[2]

¶ 19. In Vermont, to demonstrate causation for a legal malpractice claim, a plaintiff must show that the attorney's "negligence was the proximate cause of the plaintiff's injury." Estate of Fleming v. Nicholson, 168 Vt. 495, 497, 724 A.2d 1026, 1028 (1998). Proximate cause requires a plaintiff to demonstrate by a preponderance of the evidence that the attorney's act was a cause-in-fact of the plaintiff's injury.[3] Knott v. Pratt, 158 Vt. 334, 336, 609 A.2d 232, 233 (1992)

---

[2] To be clear, we do not hold that the trial court's factual findings were clearly erroneous. See Adams v. Adams, 2005 VT 4, ¶ 10, 177 Vt. 448, 869 A.2d 124 (2005) ("We will not disturb the trial court's factual findings unless they are clearly erroneous, even if the record contains inconsistencies or substantial evidence to the contrary."). We do not disagree with the sufficiency of the court's factual findings in any respect. Rather, we conclude that those findings lead inescapably to the legal conclusion that plaintiff established causation by a preponderance of the evidence. Collins v. Thomas, 2007 VT 92, ¶ 8, 182 Vt. 250, 938 A.2d 1208 (2007) (noting causation "may be decided as a matter of law where the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way"). Moreover, as discussed below, we conclude that the court did not apply the correct legal standard for causation. Infra, ¶ 27; see also Adams, 2005 VT 4, ¶ 10 ("Our review of the court's legal determinations . . . is nondeferential and plenary.").

[3] In the specialized field of legal malpractice, this Court has "emphasized that an element of proximate cause in lawyer malpractice actions is 'cause-in-fact.' " Roberts v. Chimileski, 2003 VT 10, ¶ 15, 175 Vt. 480, 820 A.2d 995 (2003) (mem.) (quotation omitted); See also Knott, 158

6

(addressing plaintiff's burden to prove that "but for" defendant's negligent conduct, plaintiff would have prevailed). That is, a plaintiff must prove it is more likely than not that, but for the attorney's negligent conduct, the plaintiff would not have been harmed. Id.; see also Restatement (Second) of Torts § 433B cmt. a (1965).

¶ 20. Generally, to establish cause-in-fact a plaintiff should rely on expert testimony; however, in cases "[w]here a professional's lack of care is so apparent that only common knowledge and experience are needed to comprehend it, expert testimony is not required to assist the trier of fact in finding the elements of negligence." Estate of Fleming, 168 Vt. at 497-98, 724 A.2d at 1028. This is particularly true where the negligence is based on an attorney's failure to inform a client of important information. Id. at 498, 724 A.2d at 1028.

¶ 21. The trial court made the following dispositive findings. First, the court found that, "based on consideration of [defendant's] advice, [plaintiff] decided that she would delay filing an action for parentage." Similarly, the court found that plaintiff signed a retainer agreement with defendant in the fall of 2011, and, again relying on defendant's advice, waited until 2012 before authorizing defendant to file the parentage action. Anticipating this year without child support payments, plaintiff made arrangements to support her daughter with loans from her mother and

Vt. at 336, 609 A.2d at 233 ("The issue here is whether defendant's negligence, if any, was the 'cause-in-fact' of plaintiff's damages."); Brown, 140 Vt. at 338, 437 A.2d at 1104 ("The plaintiff-client must show that the attorney's negligence was the proximate cause of the injury of which he complains. Therefore, plaintiff bore the burden of showing that defendant's negligence was the cause-in-fact of his damages." (citation omitted)). To the degree that this Court has merged the proximate cause inquiry with the cause-in-fact inquiry for legal malpractice claims, we note that the meshing of the two inquiries does not extend outside of attorney malpractice. See, e.g., Thomas, 2007 VT 92, ¶ 8 ("[C]ausation requires both "but-for" and proximate causation."); Roberts v. State, 147 Vt. 160, 163, 514 A.2d 694, 695 (1986) ("Without the limitations of proximate cause, the scope of liability for a defendant's negligence may be extended almost infinitely by ever-expanding causal links; proximate cause is the law's method of limiting such liability."). Moreover, in this case, plaintiff clearly established both but-for causation and that "defendant's negligence was legally sufficient to result in liability." Thomas, 2007 VT 92, ¶ 8 (quotation omitted).

her mother's friend; according to the trial court, these loans were provided with the understanding that the money would be repaid once the child support obligation was determined. All of these findings established a clear causal link between the delayed filing and defendant's advice and, further, showed that plaintiff expected the child support to be retroactive because of defendant's advice.

¶ 22. In addition to the steps plaintiff took after relying on defendant's advice, defendant's own admission demonstrates that plaintiff would have filed earlier if she had been properly informed of the law. In a letter to the father's attorney, defendant acknowledged that "[w]ithout a doubt, had the rules on retroactivity of support been more clear, [plaintiff] would have filed a parentage action as soon as [her daughter] was born." Although defendant sent the letter during negotiations, the letter does not provide any reason to suggest that defendant's admission was merely a negotiating tactic. In the letter, defendant admitted her error and requested sympathy for plaintiff's financial burden, specifically mentioning the loans plaintiff accrued during the fifteen months prior to the parentage action. Defendant's understanding of the plaintiff's position on child support further supports the conclusion that plaintiff would not have delayed filing but for defendant's negligent advice.

¶ 23. Likewise, although child custody and parental rights concerned plaintiff, the court's findings demonstrate that she was equally concerned about monetary support. When defendant recommended delaying the parentage action, the court found that plaintiff specifically inquired about the implication that the delay would have on the child support determination. Plaintiff also testified that she was unable to financially support both herself and her child. That is why she sought assistance from her mother and her mother's friend until the father's child support arrangement was determined.

¶ 24. Finally, plaintiff's negative emotional reaction when she discovered defendant's incorrect advice was unequivocal. When defendant forwarded an email to plaintiff explaining the

8

correct law regarding retroactivity, plaintiff found the news "devastating" and claimed, "I can hardly see straight [sic] I'm so angry and upset." In addition, plaintiff testified that she was "very upset" and "had some panic" when defendant's associate attorney told her that child support would be retroactive only to the date that plaintiff initiated action. Although not conclusive, coupled with the other findings described above, this evidence strongly supports plaintiff's claim that, but for defendant's negligent advice, plaintiff would not have delayed the parentage filing.

¶ 25.    Our case law demonstrates that the court's factual findings easily establish, by a preponderance of the evidence, that defendant's negligent advice was the cause-in-fact of plaintiff's injury. For example, in Estate of Fleming, the plaintiff alleged damages resulting from the attorney's failure to disclose a subdivision violation found during a title search. 168 Vt. at 496, 724 A.2d at 1027. We held that the attorney proximately caused the plaintiff's injury when the attorney failed to disclose information necessary for an informed decision-making. Id. at 499, 724 A.2d at 1029. Specifically, we noted that the attorney was the source of information for the plaintiff and that, absent this information, the plaintiff necessarily misapprehended his legal position. Id. In other words, the plaintiff's necessary reliance on the attorney's expertise was sufficient to establish causation. See also Powers v. Hayes, 172 Vt. 535, 536, 776 A.2d 374, 376 (2001) (mem.) (concluding that circumstantial evidence regarding client's intent was sufficient to demonstrate "a genuine issue of material fact with respect to causation"). In this case, not only did plaintiff necessarily rely on defendant's advice regarding the filing date, but defendant also acknowledged that plaintiff would have immediately filed but for her advice. This is sufficient to demonstrate causation-in-fact.

¶ 26.    Defendant's arguments to the contrary are based on an alternative theory of causation and are not persuasive. She suggests that plaintiff would have delayed filing even if she had been given the correct advice. For example, defendant speculates that the father would have become belligerent if the parentage action had been filed immediately and claims that, because

9

defendant's advice avoided the possibility of a contentious custody battle, plaintiff would have delayed filing. This argument is not supported by the findings, which indicate that, when plaintiff communicated her pregnancy to the father, he expressed his desire to avoid interactions with both plaintiff and their child. The only indication of contentious behavior was the father's tangential statement that litigation could turn his mother into a "mad dog"—a statement he made <u>after</u> the parentage action was filed and child custody had been settled. These findings show indifference, rather than bellicosity. Similarly, the trial court's conclusion that plaintiff's primary goal was custody of her child is not supported by the findings; at most, the findings demonstrate equal goals of custody and child support. Finally, defendant claims, and the court found, that her letter to the father's attorney reflected a negotiating strategy, "not an admission directly establishing that [defendant] would have deviated from her advice to delay litigation." This may have been defendant's hidden intent, but the language of the letter plainly states that plaintiff would have filed had she been given correct advice. And this conclusion is sufficiently supported by the other factual findings described above.

¶ 27. More importantly, the alternate theory of causation advanced by defendant and apparently adopted by the trial court is not the standard for determining causation-in-fact. See <u>Knott</u>, 158 Vt. at 336, 609 A.2d at 233 (addressing plaintiff's burden to prove that "but for" defendant's negligent conduct, plaintiff would have prevailed). The trial court concluded that "[p]laintiff has not demonstrated that she likely would have made any different decision, even if properly advised of the risks of losing support." This was not a correct statement of the law. Plaintiff merely needed to prove by a preponderance of the evidence that but for defendant's negligence, plaintiff would not have suffered harm. <u>Id</u>. That is a standard plaintiff satisfied here.

## II. Damages

¶ 28. In addition to concluding that plaintiff did not establish causation, the trial court determined that plaintiff failed to demonstrate any nonspeculative monetary damages. Plaintiff

10

argues that the court erred in this conclusion and claims on appeal that she is entitled to the attorney's fees she expended in pursuing this malpractice claim. We conclude plaintiff proved measurable damages caused by defendant's negligent advice and, as a result, we remand for the court to calculate the amount of damages. We decline to award attorney's fees.

## A. Direct Damages

¶ 29. In a legal malpractice action, all damages proximately caused by an attorney's negligence constitute the measure of damages.[4] Bloomer v. Gibson, 2006 VT 104, ¶ 27, 180 Vt. 397, 912 A.2d 424; see also Langlois v. Town of Proctor, 2014 VT 130, ¶ 45, 198 Vt. 137, 113 A.3d 44 (2014) (stating standard for tort damages is "that such damages are the direct, necessary, and probable result of defendant's negligent act"). But an attorney is not liable if the damages are too remote or too speculative. 3 R. Mallen, Legal Malpractice § 21:7 (2017 ed.). "The test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount but concerns the more basic question of whether there are any damages, which focuses on the fact of damages, rather than the amount." Id.; see also Carbone v. Tierney, 864 A.2d 308, 317 (N.H. 2004) (noting that in legal malpractice cases "damages [cannot] be calculated with mathematical certainty, and the method used to compute damages need not be more than an approximation"); Capital Garage Co. v. Powell, 98 Vt. 303, 313, 127 A. 375, 379 (1925) ("In tort actions, damages are necessarily a matter of judgment largely; they are to be estimated from facts and circumstances, in many cases, and in such cases substantial damages may be awarded, though there is no evidence specifically directed to their amount.").

---

[4] We note that the plaintiff seeks purely monetary damages as part of a tort action and that "[p]urely economic losses may be recoverable in professional services cases because the parties have a special relationship, which creates a duty of care independent of contract obligations." EBWS, LLC v. Britly Corp., 2007 VT 37, ¶ 31, 181 Vt. 513, 928 A.2d 497.

¶ 30. Here, because Vermont law requires that some child support be paid by the noncustodial parent, see 15 V.S.A. § 656(b), plaintiff would have been guaranteed some measure of child support from the date of the parentage action. Thus, as a direct result of defendant's negligent advice to delay filing, plaintiff did not receive fifteen months of child support, from July 2011 to October 2012, nor could she retroactively recover the child support. After applying the appropriate legal standard, it is plain that plaintiff is entitled to damages for the fifteen months without child support.

¶ 31. Despite this clear causal link between defendant's negligence and the damages suffered, the trial court relied on two faulty assumptions when it found that the alleged damages were speculative. First, the court stated that plaintiff submitted no evidence to support an award of $1875 per month from the date of her child's birth; that is, the evidence did not establish that the monthly payment for the first fifteen months would have been the same child support amount that the father and plaintiff stipulated to after negotiations between their attorneys. Instead, the court noted that the father submitted two financial affidavits that resulted in two different child support calculations under Vermont's child support guidelines. One of the affidavits considered the father's family gift income, while the other did not. Either with the gift income or without the income, the father's child support obligation calculated from the affidavits would have been less than $1875 per month. Because these amounts were lower than the stipulated amount and because the father could have contested the inclusion of gift income, the court concluded that the father's income could not be determined in the absence of the stipulation and that, as a result, any award was speculative.

¶ 32. We are not persuaded by this analysis because it ignores the causal link between negligence and damages. The potential of a lesser or different amount than the $1875 monthly payment does not mean that the damages did not occur or that they were speculative. R. Mallen, supra, § 21:7 (noting whether damages are speculative "focuses on the fact of damages, rather than

12

the amount"). Nor was plaintiff required to prove that the child support payments for the first fifteen months would have been equal to $1875 per month. All that is required is that the damages be caused by the attorney's negligent conduct. Gibson, 2006 VT 104, ¶ 27; R. Mallen, supra, § 21:8.

¶ 33. Similarly, the trial court's second assumption is flawed. The trial court determined that the damages were speculative because—summed up over the entire length of the child support obligation—the $1875 monthly payment effectively made up for the fifteen months of missing child support. In making this argument, the court again relied on the two hypothetical child support awards calculated from the father's financial affidavits. In comparison to those amounts, the court concluded that, based on the $1875 monthly payment, plaintiff would receive more total child support over the length of the child support obligation than she would have received based on either amount calculated from the father's financial affidavits, even if the child support payments would have begun at the child's birth.

¶ 34. Like the trial court's other analysis, this claim errs because it focuses on the subsequent stipulation, not on the harm directly caused by defendant. Gibson, 2006 VT 104, ¶ 27. The court's suggestion that, over the length of the child support obligation, the $1875 monthly award will adequately compensate for the fifteen months without child support completely ignores the direct monetary costs plaintiff accrued caring for her daughter as an infant, costs that she covered by obtaining personal loans that she cannot repay. Moreover, the court's calculations based on the length of the child support obligation involve pure speculation. Child support is flexible by nature and may be modified at any time upon a showing of a "real, substantial, and unanticipated changes in circumstances" or without such a showing if the child support order has not been modified for three years. See 15 V.S.A.§ 660(a)(1). As a result, the court's comparison of the total child support payments over the length of the obligation period rested on variable grounds.

¶ 35. Although we conclude that plaintiff is legally entitled to those damages caused by defendant's negligent advice, we remand for the court to calculate the damages. See Vincent v. DeVries, 2013 VT 34, ¶¶ 6, 8, 193 Vt. 574, 72 A.3d 886 (noting that issue of calculating damages was question of fact for jury as factfinder). We note that the court has several options for computing damages, including the stipulated child support order of $1875 per month, the two other child support orders based on the father's financial affidavits (either with or without his family gift income), or the loan amount accrued from her mother and her mother's friend. Of course, whatever total the trial court arrives at, it must be supported by the evidence and it must make plaintiff whole for the period she did not receive child support payments. See Kramer v. Chabot, 152 Vt. 53, 55, 564 A.2d 292, 293 (1989) ("In a tort action, compensation is provided so as to restore the person damaged, as nearly as possible, to the position he or she would have occupied had no wrong been committed.").

B. Attorney's Fees

¶ 36. In addition to damages, plaintiff seeks attorney's fees she spent pursuing her malpractice action against defendant. We conclude that the American Rule prevails in this case, and therefore, each party bears its own attorney's fees.

¶ 37. In Southwick v. City of Rutland, we stated that "[w]hen addressing a question of attorney's fees, Vermont adheres to what is called the American Rule: parties must bear their own [attorney's] fees absent a statutory or contractual exception." 2011 VT 105, ¶ 5, 190 Vt. 324, 30 A.3d 1298 (quotation omitted). "Our standard for departing from this rule is demanding." Knappmiller v. Bove, 2012 VT 38, ¶ 4, 191 Vt. 629, 48 A.3d 607 (mem.). At the most basic level, the attorney's fees must be caused by the malpractice. Gibson, 2006 VT 104, ¶ 27.

¶ 38. In this case, plaintiff appears to raise two different theories for recovering the fees spent in prosecuting her malpractice claim against defendant: direct damages and consequential

damages.[5] Because plaintiff did not incur the fees while prosecuting her rights or interests against a third party, neither theory justifies a departure from the American Rule.

¶ 39. Under the direct damage theory of attorney's fees, damages may be recoverable if the client hires another lawyer to correct the consequence of the former lawyer's negligence. R. Mallen, supra, § 21:12; see Britly Corp., 2007 VT 37, ¶ 8, (noting that in contract law "[d]irect damages are for losses that naturally and usually flow from the breach itself, and it is not necessary that the parties actually considered these damages." (quotation omitted)).

¶ 40. We have never expressly categorized attorney's fees as recoverable direct damages. In Gibson, while considering whether the fees paid to the negligent attorney could be awarded as direct damages, we distinguished between two categories of attorney's fees: those incurred "to correct the adverse consequences of [the attorney's] malpractice," which "might be recoverable because they were caused by the wrongful act or omission," and those fees incurred when the attorney took some action that provided plaintiff with some value. 2006 VT 104, ¶ 27 (quotation omitted). Ultimately, we concluded that the attorney's fees fell under the second category because

---

[5] We have previously noted the distinction between direct and consequential damages in the context of contract law. See, e.g., Britly Corp., 2007 VT 37, ¶ 8 (defining direct and consequential damages). As described above, legal malpractice sounds in tort law and we normally strive to maintain the separation between tort and contract damages. See Springfield Hydroelectric Co., 172 Vt. at 316, 779 A.2d at 71 ("We have been careful to maintain a dividing line between contract and tort theories of recovery."). But we have also analyzed the recovery of attorney's fees in the context of a legal malpractice claim, although such damages are generally associated with contract law. See Gibson, 2006 VT 104, ¶ 25 ("Although plaintiff raised tort claims to establish liability, he sought only the return of the fee paid to defendant, damages normally associated with breach of contract."). In short, in the specialized context of legal malpractice claims, analyzing damage theories imported from contract law can help to clarify our analysis, particularly where the damages sought are purely economic. See Britly Corp., 2007 VT 37, ¶ 31 ("Purely economic losses may be recoverable in professional services cases because the parties have a special relationship, which creates a duty of care independent of contract obligations."); Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 18 (2d Cir. 2000) ("[T]he better course is to recognize that the [economic loss] rule allows . . . recovery in the limited class of cases involving liability for the violation of a professional duty. To hold otherwise would in effect bar recovery in many types of malpractice actions.").

15

the client received some value from the attorney's work irrespective of the malpractice; therefore, the attorney's malpractice was not the cause of the fees the client paid to him. Id. ¶¶ 27, 29.

¶ 41. Plaintiff seizes on the first category of attorney's fees described in Gibson and argues that she undertook this suit and subsequent appeal solely to correct the adverse consequences of defendant's malpractice. Id. ¶ 27. But plaintiff's argument ignores a key factual distinction: Gibson involved the fees paid to the malpracticing attorney, not the subsequent attorney, as in this case.

¶ 42. In articulating Gibson categories, moreover, we relied on Ramp v. St. Paul Fire & Marine Ins. Co., a Louisiana Supreme Court case stating that "attorney's fees incurred by the plaintiffs in eliminating or in mitigating the damage caused them by the negligence of the defendants are their total damage." 269 So. 2d 239, 246 (La. 1972). In Ramp, after the clients relied on an attorney's incorrect advice that they had lost certain succession rights, the clients discovered that they did in fact possess the rights in question and pursued these succession rights through multiple stages of litigation against third parties. The court concluded that the cost of this litigation could be recovered as direct damages. Id. at 244 ("The risk of the expenditure of sums of money for costs of litigation, including attorney's fees, directly flowed from the breach of the duty owed by the attorneys to these plaintiffs.").

¶ 43. Plainly, the factual circumstances in Ramp are not analogous to this case. Ramp did not involve a suit to recover fees paid to litigate the malpractice; instead, the fees recovered were those used to prosecute the clients' succession rights against third parties. Thus, Ramp stands for the principle that attorney's fees incurred to mitigate the damage caused by negligence may be recoverable if the malpractice causes the client to pursue his or her rights against a third party. Id. at 246; see also Bourne v. Lajoie, 149 Vt. 45, 53, 540 A.2d 359, 364 (1987) (allowing recovery of attorney's fees "incurred in bringing the reformation action to recover title to the land"). This limitation makes sense; otherwise, a client dissatisfied with an attorney's work would only need

to hire a new attorney and incur new fees to generate proof of damages for a legal malpractice claim.  In this case, because the attorney's fees sought in this case did not result from litigation against a third party, we do not believe the framework governing direct damages outlined in Ramp and Gibson applies to this case.

¶ 44.  Plaintiff's claim that the fees paid to litigate this case should be recoverable under a theory of consequential damages fails for the same reason.  "Consequential damages are compensation for those additional injuries that are a proximate result of the attorney's negligence or otherwise wrongful conduct, which do not flow directly from or concern the objective of the retention."  R. Mallen, supra, § 21:1; see also Britly Corp., 2007 VT 37, ¶ 8 ("Special or consequential damages must pass the tests of causation, certainty and foreseeability, and, in addition, be reasonably supposed to have been in the contemplation of both parties at the time they made the contract." (quotation omitted)).  On the surface, then, a theory of consequential damages would seem more apt in this case because the attorney's fees at issue do not concern the central purpose of defendant's retention.

¶ 45.  In the context of consequential damages, however, "[t]he prevailing rule is that a plaintiff cannot recover attorneys' fees incurred in prosecuting the malpractice action" unless the plaintiff demonstrates some sort of bad faith on the part of the negligent attorney.  R. Mallen, supra, § 21:24; Banker v. Nighswander, Martin & Mitchell, 37 F.3d 866, 873 (2d Cir. 1994) ("Absent bad faith on the part of the adverse party, we see no basis under New Hampshire law for an award of attorney's fees to the successful litigant in a legal malpractice action.").  The case cited by plaintiff illustrates this point.  In Baker v. Dorfman, the Second Circuit approved an award of attorney's fees incurred as part of an appeals process that was necessary to correct the harm done by the attorney's malpractice.  239 F.3d 415, 426 (2d Cir. 2000).  In doing so, the court noted that "[l]egal fees sought as part of a malpractice cause of action are recoverable if the fees were not merely an incident of the litigation but, instead, constituted consequential damages of the

17

malpractice." Id. (quotation omitted). Again, this is logical because a client could prove damages for a legal malpractice claim merely by hiring a new attorney and incurring new fees. See Lorenzetti v. Jolles, 120 F. Supp. 2d 181, 190 (D. Conn. 2000) (concluding client could recover only those attorney's fees related to pursuing his underlying claim "and not the legal malpractice portion of the case"). Here, no bad faith exists and plaintiff did not pursue this action against a third party, so we decline to award attorney's fees.

Reversed and remanded for calculation of damages.

FOR THE COURT:

_____
Associate Justice

¶ 46. **CARROLL, J., dissenting.** I agree with the majority that the trial court did not use the correct legal standard for causation. However, the court applied a standard more deferential to plaintiff and the factual findings made by the trial court support the conclusion that plaintiff failed to prove by a preponderance of the evidence that she would have filed her parentage complaint sooner if she had been given accurate advice concerning child support. For this reason, I respectfully dissent.

¶ 47. Plaintiff was required to prove that defendant's negligence was the proximate cause of her injuries. Brown v. Kelly, 140 Vt. 336, 338, 437 A.2d 1103, 1104 (1981). In order to prevail, plaintiff needed to demonstrate, by a preponderance of the evidence, that she would have filed her parentage complaint sooner "but for" defendant's negligence. Knott v. Pratt, 158 Vt. 334, 336, 609 A.2d 232, 233 (1992). The trial court recognized that plaintiff was required to show that defendant's negligence was a cause-in-fact of some injury capable of being measured by monetary damages. However, rather than analyzing whether plaintiff demonstrated that "but for" the

18

negligence she would have filed sooner, the trial court concluded that plaintiff had not shown that she "likely" would have made a different decision. I agree with the majority that this is not the applicable causation standard but, by employing the "likely" measurement, the trial court held plaintiff to a lower standard in proving causation. Ante, ¶ 27. Stated simply, if the trial court concluded plaintiff failed to show she "likely" would have chosen a different path, it necessarily would have concluded that she failed to make the more stringent "but for" connection. Because the evidence supports the conclusion that plaintiff failed to meet her burden under the "but for" analysis, the trial court's application of the more permissive standard is of no moment.

¶ 48. The majority highlights that plaintiff relied on defendant's advice in making decisions about her case. Ante, ¶ 21. I wholeheartedly agree. But the advice consisted of more than counseling about child support. The court relied on defendant's testimony in reaching the conclusion that plaintiff was motivated against litigating the issues for fear it would cause a rift between her and the child's paternal grandparents who were in a position to help support the child financially. The court's findings support a conclusion that plaintiff was not only concerned about child support, but was equally, if not more, concerned about custody and controlling the child's contact with her father. The court reasoned that "[defendant's] advice to plaintiff with respect to the timing of litigation was entirely appropriate to her client's primary objectives of retaining as much control as possible over potentially volatile issues in determining parental rights and responsibilities." At the trial, both plaintiff and defendant testified to plaintiff's motivations in delaying her parentage filing. Their testimony was inconsistent. However, on this pivotal issue, the trial court was in the best position to make a credibility determination, which, by inference, resulted in the court giving more weight to defendant's testimony in reaching its conclusions. See Benson v. Hodgdon, 2010 VT 11, ¶¶ 10-12, 187 Vt. 607, 992 A.2d 1053 (holding trial court is in unique position to assess witness credibility and weight of evidence).

19

¶ 49. Looking beyond the trial court's specific factual findings, there is additional evidence in the record that supports a conclusion that plaintiff was motivated by more than the timing of child support when she made the decision to delay filing her parentage case. When defendant informed plaintiff that there were important strategic advantages in remaining out of court for at least a year and that threats to contest custody are sometimes made as negotiating ploys to limit child support, plaintiff felt that this was a "terrifying prospect." Plaintiff also testified that a delay in filing would allow her to "enjoy the time with [her] daughter and bond with her and have that time together without contentious litigation at the forefront of it all." She described this as a "win/win" situation. The record supports a conclusion that plaintiff failed to demonstrate that "but for" the erroneous advice concerning child support, she would have filed her parentage complaint sooner.

¶ 50. The majority concludes that the court's findings "lead inescapably" to the conclusion that plaintiff established causation by a preponderance of the evidence. Ante, ¶ 18 n.2. It cites Collins v. Thomas for the proposition that causation "may be decided as a matter of law where the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." 2007 VT 92, ¶ 8, 182 Vt. 250, 938 A.2d 1208 (quotation omitted). In Collins, we reviewed a trial court decision granting summary judgment for the defendant in a wrongful death action based upon undisputed facts. We concluded that the trial court did not err in rejecting the plaintiff's argument that but for defendant's conduct in driving an uninspected and defective truck, the death would not have occurred. Id. ¶ 9 (citing Wilkins v. Lamoille Cty. Mental Health Servs., Inc., 2005 VT 121, ¶ 10, 179 Vt. 107, 889 A.2d 245 for proposition that "a defendant cannot be considered a cause of the plaintiff's injury if the injury would probably have occurred without the defendant's unreasonable conduct" (quotation omitted)).

¶ 51. In contrast, the trial court here was required to reach a conclusion by weighing the findings—findings with which neither the majority nor the parties take issue. But the majority construes the facts and circumstances differently than the trial court and effectively assigns more weight to plaintiff's testimony in coming to its decision. Granted, our review in this case is de novo, but we must still uphold the trial court's conclusions that address mixed questions of law and fact so long as the court applied the correct legal standard and the conclusions are supported by the findings. Cf. Mahoney v. Tara, LLC, 2014 VT 90, ¶ 7, 197 Vt. 412, 107 A.3d 887 (clarifying that this Court reviews only pure questions of law de novo). The fact that the trial court in this instance decided the causation issue using a standard that was more deferential to plaintiff, and by doing so essentially ruled out a "but for" showing, should not result in assigning more weight to evidence that the trial court was in the best position to assess.

¶ 52. In summary, the trial court's findings and the record as a whole support the conclusion that plaintiff failed to demonstrate that "but for" defendant's negligence, she would have filed her parentage complaint sooner. The trial court's application of a standard more deferential to plaintiff does not change, but supports, this result.

¶ 53. I am hereby authorized to state that Judge Harris joins this dissent.

_____
Associate Justice

21